OLGA IRIS PÉREZ, demandante y recurrente, *v.* JOSÉ ACEVEDO QUIÑONES, demandado y recurrido.

*Número:* R-69-118 *Resuelto:* 20 de octubre de 1972

*Néstor A. Rodríguez Escudero,* abogado de la recurrente; *José Veray, Jr.,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El Tribunal Superior, Sala de Aguadilla, dictó sentencia desestimando la demanda instada por Olga Iris Pérez contra su padre José Acevedo Quiñones, en pleito de filiación.

La prueba de la actora consistió en su testimonio y el de su señora madre, Gregoria Pérez Moreno.

Doña Gregoria declaró que vive en el Barrio Ensenada de Rincón desde que nació; que empezó a vivir maritalmente con el demandado en abril de 1942, naciéndole una hija, producto de estas relaciones, el 8 de febrero de 1943 y quien es la demandante Olga Iris Pérez; que el demandado la ayudó para el parto, dándole dinero para la comadrona y después del nacimiento de la niña, ella y el demandado continuaron sus relaciones hasta que ella empezó a pedirle el apellido para su hija, entonces él se retiró; que cuando el demandado creyó que a ella se le había olvidado "eso" volvió a "rondear" su casa y siempre ayudaba a la niña dándole dinero para vestirla.

Manifestó también que cuando comenzó a vivir con el demandado, hacía cuatro años que estaba sola y durante el tiempo que vivió con él no vivió con otro hombre; que él la visitaba dos o tres veces en semana en su casa, donde vivía con sus otros hijos y tenían relaciones sexuales. Al preguntársele si tenía alguna duda que la demandante es hija del demandado, contestó: "porque voy a tener duda, si es mi hija, nació de mí y del señor José Acevedo, porque voy a tener duda."

En contrainterrogatorio declaró que tiene ocho hijos; la demandante; cinco hijos de su matrimonio con Miguel Mar-

tínez; y otros dos producto de sus relaciones con Alfredo Guay, con quien vivió sin casarse en 1937 y 1939. Los dos hijos que tuvo con Guay están reconocidos.

Conocía a José Acevedo Quiñones desde que ella tenía como diez años. Ya él estaba casado con una mujer llamada Sara. No fue hasta abril de 1942 que ella comenzó a vivir con él, quedando encinta como desde el mes de mayo de ese año. Su comadrona fue Juana Bonet, quien a la fecha de la vista tenía alrededor de tres años de fallecida.

Desde que nació la niña comenzó a pedirle el apellido para ésta. A él le daba coraje y se iba, pero luego regresaba y continuaban sus relaciones. No tuvo más hijos del demandado pues después del nacimiento de la niña utilizaron contraceptivos. Cuando Olga Iris tenía como tres años y medio, ella lo llevó a la corte. En 1947 cuando la niña tenía como cuatro años, como ella continuaba pidiéndole el apellido, el demandado "cogió coraje" y se fue definitivamente. Cuando la demandante tuvo seis años, comenzó a ir a la escuela y el demandado le pasaba alimentos. Para esa época fue que le informó a su hija que el demandado era su padre, "cuando ya tenía conocimiento, que ya podía saber."

A la fecha del juicio, sus otros hijos se encontraban en Nueva York. Aunque sus vecinos sabían que el demandado vivía con ella, no vinieron a declarar porque "están muertos y otros están embarcados y el que iba a venir está con una fatiga que por eso no pudo venir."

La demandante declaró que a la fecha del juicio estaba casada, tenía 26 años, y vivía en el Barrio Ensenada de Rincón; que vivió con su mamá, Gregoria Pérez, hasta la edad de quince años. Conoce al demandado y supo que era su padre desde la edad de seis años; que cuando su mamá la llevaba para la escuela, vio al demandado y le dijo a ella "mira, ese es tu padre"; que fue donde el demandado y le pidió la bendición; el le echó la bendición y le pasó la mano por la cabeza; a cada rato que iba al pueblo, lo veía y hablaba con él, le pedía

la bendición y él se la echaba; que a veces le pedía un centavo o dos para dulces y él le decía: "Ahora no tengo pero mañana te lo doy.", y al otro día se los daba; que una vez le llegó a dar hasta tres o cuatro dólares para zapatos; nunca vio que le diera dinero a otros muchachos, sólo a ella. También manifestó que cuando ella se casó no fue donde él.

En su repregunta declaró que la última vez que él le echó la bendición fue cuando ella estaba como en séptimo grado, pues ya después ella no se la pedía. Anteriormente él la cogía de la mano al salir de la escuela y le decía: "Dios te bendiga y coge la orilla que no te pase nada." Cada vez que su madre veía al demandado le decía a ella que él era su padre, que le pidiera la bendición. Nunca le dijo papá, y nadie que no fuera su madre le dijo que ése era su padre, pero recuerda que cuando ella era pequeña el demandado siempre iba por su casa.

El demandado José Acevedo Quiñones, munícipe de Rincón, declaró que conocía a la demandante y a doña Gregoria. Negó que Olga Iris fuese su hija y que viviese en ocasión alguna con doña Gregoria, que nunca le echó la bendición a la demandante ni le ha dado dinero; que en 1947 doña Gregoria lo llevó a la corte por abandono de menores y salió absuelto y que desde la fecha del juicio, ni la demandante, ni su madre le han requerido para que la reconozca.

En el contrainterrogatorio declaró que vive en la calle Sol de Rincón que colinda con el Barrio Ensenada, en el cual vive doña Gregoria. Viven como a tres kilómetros uno del otro. El se dedicaba a la agricultura y al comercio. Tenía su finca como a 15 ó 20 hectómetros de la casa de doña Gregoria. Sabía exactamente donde ella vivía y que le decían "Goya". El no sabe por qué doña Gregoria se antojó de denunciarlo a él ante el Tribunal de Distrito, por Abandono de Menores. Como vivían en el mismo barrio hablaba con ella y "podría ser que en alguna época ella pasara y me dijera adiós o qué pasa, como que la conocía yo." Él nunca se detuvo en la casa

de ella pues él siempre estaba en su comercio. Para 1942 cerraba a las 6 de la tarde y se quedaba sacando cuentas. A las nueve de la noche estaba acostado en su casa. No salía pues siempre ha sido hombre de su casa. Tiene diez hijos y se ha casado tres veces.

En sus conclusiones de hecho el juez de instancia expresa que la prueba de la parte demandante no fue satisfactoria ya que no hubo corroboración alguna del testimonio de doña Gregoria sobre la supuesta relación de concubinato con el demandado, y que habiendo admitido la testigo que las relaciones sexuales entre ambos eran esporádicas y se llevaban a cabo en su propio hogar donde residía con sus siete hijos ninguno de dichos hijos compareció a testificar, alegándose que todos son residentes de la ciudad de Nueva York.

Resultó "significativo" para el juzgador que doña Gregoria esperase hasta que su hija tuviese más de cuatro años para instar la acción penal cuando, según su propia declaración, el demandado "se retiró", al solicitarle ella su apellido para la niña y tan sólo muy ocasionalmente le daba $3.00 ó $4.00 para ropa y zapatos de ésta.

El juez de instancia concedió mucho peso al hecho de que vientiún años después de la sentencia absolutoria del demandado en el caso de Abandono de Menores es que se insta la acción filiatoria. Confundió lamentablemente quién era la parte demandante en el caso. En la determinación de hechos cuarta se expresa así: "4—Veintiún años más tarde se instó la presente Acción de Filiación. La causa de la demora no fue explicada. En el contrainterrogatorio admitió la demandada [*sic*] que muchos de los vecinos que supuestamente tenían conocimiento de la relación de concubinato entre ella y el demandado habían fallecido. Eso incluía la comadrona que atendió el parto de su hija, a quien alegadamente el demandado había dado dinero para dicho parto, y quien falleció hace tres años."

"Tanto la demandante como su hija han residido durante casi toda su vida en el pueblo de Rincón, Puerto Rico y no ha existido impedimento alguno para no haber ejercitado la presente acción en fecha anterior."

Concluye que "En el presente caso no se ha probado satisfactoriamente la paternidad de la demandante, concediendo el Tribunal entero crédito a la declaración del demandado."

Desde *Ocasio* v. *Diaz*, 88 D.P.R. 676 (1963) todo lo que se requiere para hacer una declaración judicial del status de hijo es la comprobación del hecho de la paternidad natural o biológica, sin importar la fecha ni demás circunstancias del nacimiento, bastando que dicha paternidad se pruebe satisfactoriamente, bajo las normas usuales de evidencia, de acuerdo con la preponderancia de las pruebas y conforme a conclusiones que, tomando en consideración las circunstancias concurrentes en el caso, representen el balance más racional, justiciero y jurídico en la resolución del pleito.

Es norma básica de la Ley de Evidencia que la evidencia directa de un testigo que merezca entero crédito, es prueba suficiente de cualquier hecho. Para desestimar la demanda el juez de instancia le concedió entero crédito al testimonio del demandado y consideró que la demandante no había probado satisfactoriamente la paternidad. De sus conclusiones manifiestamente surge que las circunstancias que así inclinaron su ánimo fueron: (a) su firme y positivo criterio, expresado en términos y sentido jurídicos, de que era necesaria la corroboración del testimonio de doña Gregoria; (b) su estimación de que la filiación era tardía y (c) su aparente confusión en cuanto a quién es la parte demandante; las relaciones sexuales esporádicas entre Doña Gregoria y el demandado; la espera por parte de la madre hasta que su hija tuvo cuatro años de edad para denunciar al demandado por abandono de menores, y luego de la denuncia, la espera de veintiún años para instar la presente acción; el hecho de que el demandado le daba muy ocasionalmente tan sólo $3.00 ó $4.00 para

ropa y zapatos de la niña; y, que el demandado era un comerciante próspero de la localidad y doña Gregoria no tenía otros bienes de fortuna.

Precisamente todo esto es lo que nos inclina más a creer en el testimonio sencillo y honesto de doña Gregoria y su hija, que en el del demandado. Primeramente hay que considerar que la ley, como ya antes indicamos, no requiere corroboración del testimonio de los testigos en este caso. El solo testimonio de doña Gregoria es suficiente para probar la paternidad.

Luego debemos considerar que la demanda no fue presentada por doña Gregoria, sino por su hija. A ésta última es a la que le pertenece el derecho de demandar reclamando su filiación. La demandante no incoó la demanda tardíamente ya que el Art. 126 del Código Civil dispone que las acciones para el reconocimiento de hijos naturales, solo podrán ejercitarse en vida del presunto padre, o un año después de su muerte. Nada tiene que ver el hecho de que esperase veintiún años desde que su madre denunciara a su presunto padre por abandono de menores. No se debe penalizar a la demandante por los actos de otros. La acción es de ella, no de su madre y la radicó en tiempo. No tenía que dar explicaciones de por qué decidió demandar cuando lo hizo.

Tampoco puede perjudicarla el que doña Gregoria esperara hasta que ella cumpliese cuatro años para denunciar al presunto padre por abandono de menores. En primer lugar, nada tiene que ver en derecho esta denuncia de 1947 con la demanda de filiación de 1968 y, en segundo lugar, este hecho escueto no debe necesariamente implicar sospechas adversas a la paternidad. Este caso en particular surgió cuando la niña tenía cuatro años. Según el testimonio de doña Gregoria fue para ese tiempo que el padre demandado se retiró definitivamente, y no es ilógico suponer que una vez desligado de la madre se olvidara de su obligación para con su hija.

De autos claramente se desprende que en la evaluación de las pruebas de la parte demandante la Sala sentenciadora actuó a base de criterios valorativos adversos a ella y manifiestamente erróneos; empero, respecto al testimonio del padre demandado, no hizo lo mismo. Si bien manifestó que le daba entero crédito a tal testimonio, no dijo que se lo negaba a los prestados por la demandante y por su señora madre. Necesariamente, no tenemos también que entender, en el presente caso, que no los creyó. Probablemente no les reconoció valor probatorio alguno porque: No fueron corroborados y se trataba de una acción filiatoria instada "veintiún años más tarde [del caso penal sobre abandono de menores] y la causa de la demora no fue explicada."

Por lo general, no alteramos las conclusiones de hecho del tribunal de instancia basadas en testimonio oral. Pero nuestra misión revisora no está limitada a infracciones de ley o quebrantamientos de forma, sino que, como reza la Sec. 1 de la Ley del 12 de marzo de 1903 (4 L.P.R.A. sec. 36), podemos "también entender en todos los hechos y tramitaciones en la causa tal como aparecieren en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras."

Para evitar mayor dilación en esta acción filiatoria consideramos que lo más justo es que dictemos la sentencia que debió haber dictado el tribunal de instancia.

A la luz de todas las circunstancias concurrentes en esta acción filiatoria, principalmente la preponderancia de las pruebas en favor de la parte demandante—sin que haya necesidad legal de corroboración de testimonios en estos casos—concluimos que en la misma quedó satisfactoria y suficientemente probado que la demandante Olga Iris Pérez es hija del demandado José Acevedo Quiñones, habida en sus relaciones sexuales con doña Gregoria Pérez Moreno.

Por todo lo cual *se revocará la sentencia recurrida y, en su lugar, dictaremos otra declarando con lugar la acción*

*filiatoria ejercitada con los otros pronunciamientos que procedan.*

El Juez Asociado, Señor Dávila, concurrió en voto separado con el cual concurrieron los Jueces Asociados, Señores Rigau, Ramírez Bages, Torres Rigual y Martínez Muñoz. El Juez Presidente Interino, Señor Pérez Pimentel, disintió sin opinión. El Juez Asociado, Señor Martín, disintió en voto separado, con el cual está conforme el Señor Juez Presidente Interino, Pérez Pimentel.

—O—

Voto concurrente emitido por el Juez Asociado Señor Dávila con el cual concurren los Jueces Asociados Señores Hernández Matos, Ramírez Bages, Torres Rigual y Martínez Muñoz

San Juan, Puerto Rico, a 20 de octubre de 1972

He concurrido en el dictamen que revoca la sentencia dictada por el tribunal sentenciador porque éste al aquilatar la prueba usó unos criterios que este Tribunal nunca ha exigido en estos casos: la necesidad de corroboración de la prueba que establece la paternidad. Ver *Ortiz* v. *Viera,* 61 D.P.R. 514–515 (1943). Cuando este Tribunal revocó la doctrina que requería en estos casos prueba "robusta y convincente" echó por la borda los obstáculos que la jurisprudencia había establecido contra los que reclamaban el reconocimiento de la paternidad. La "comprobación del hecho" de que hablamos en *Ocasio* v. *Díaz,* 88 D.P.R. 676 (1963) no tiene el alcance que le pretende dar la opinión disidente, aparentemente queriendo revivir doctrinas ya abandonadas por este Tribunal. No es correcto yuxtaponer el concepto de "corroboración" que utilizó el juez sentenciador con el de "comprobación del hecho de la paternidad" a que aludimos en el caso de *Ocasio.* Lo que *Ocasio* dejó claramente establecido es que lo

único que se requería es que la "paternidad se pruebe satisfactoriamente bajo las normas usuales de evidencia."

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín con la cual concurre el Juez Presidente Interino Señor Pérez Pimentel

San Juan, Puerto Rico, a 20 de octubre de 1972

Disiento de la opinión emitida por el Tribunal en el día de hoy en este caso. La doctrina sentada en el caso de *Ocasio* v. *Díaz*, 88 D.P.R. 676 (1963) citada por el tribunal en su opinión de hoy y por el juez de instancia en sus conclusiones de derecho, es como sigue:

"Toda declaración judicial del *status* de hijo se fundará en la comprobación del hecho de la paternidad natural o biológica, sin importar la fecha ni las demás circunstancias del nacimiento, bastando que dicha paternidad *se pruebe satisfactoriamente,* bajo las normas usuales de evidencia, de acuerdo con la preponderancia de las pruebas y conforme a conclusiones que, tomando en consideración las circunstancias concurrentes en el caso, representen el balance más racional, justiciero y jurídico en la resolución del pleito." (Énfasis suplido.)

Aplicando la norma jurídica del caso de *Ocasio* el juez de instancia determinó como cuestión de hecho que la comprobación del hecho de la paternidad no fue satisfactoria. Y, por ello dice que la prueba que tuvo ante sí de la parte demandante no le satisfizo. Se refiere a los testimonios de la demandante y de su madre. El conjunto de la prueba oída me hace creer que el juez de instancia encontró que la prueba de doña Gregoria debió haber sido fortalecida por no haberle convencido la que tuvo ante sí. La redacción de las determinaciones de hecho no es la más feliz, pero del conjunto de ellas no puedo llegar a otra conclusión de que cuando el juez de instancia habla de que "[N]o hay *corroboración* alguna al

testimonio de doña Gregoria sobre la supuesta relación de concubinato con el demandado.", se refiere a la *comprobación* del hecho de la paternidad a que se refiere el caso de *Ocasio*. (Énfasis nuestro.)

El propio juez de instancia al hacer sus conclusiones de derecho expone la norma del caso de *Ocasio* la cual permite que se compruebe la paternidad satisfactoriamente bajo las normas usuales de evidencia. De acuerdo con la Ley de Evidencia la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho. 32 L.P.R.A. sec. 1661. La premisa en que se basa la referida disposición es que el testigo debe merecer entero crédito al juzgador. La prueba no tiene que ser robusta y convincente según hemos dicho antes. *Sanabria* v. *González*, 82 D.P.R. 885 (1961). Pero, debe ser creída. Y, el juez de instancia creyó al demandado en el caso de autos.

Un análisis del testimonio de dicho demandado y los de la demandante y su madre, revela que el del primero es irreconciliable con los de aquéllas. Al tribunal darle entero crédito al testimonio del demandado rechazó los de la demandante y su madre. Exigir que hiciera pronunciamiento sobre la credibilidad que le merecían estas últimas sería absurdo, ya que no podría creer a un mismo tiempo las versiones contradictorias de ambas partes, constituyendo la una la negación de la otra. El tribunal de instancia dirimió pues el conflicto de la prueba en contra de la demandante aplicando la norma del caso de *Ocasio*.

Repetimos, según lo hemos hecho en el pasado, las claras disposiciones de la Regla 43.1 de las de Procedimiento Civil:

> ". . . [l]as determinaciones de hecho basadas en el testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. . . ."

Una determinación es "claramente errónea" cuando aun habiendo evidencia que la sostenga, el tribunal de apelación, en base a la totalidad de la evidencia, queda con la firme y cierta convicción de que se ha cometido error. Véanse *United States* v. *Gypsum Co.*, 33 U.S. 364, 395 (1947); *McCallister* v. *United States*, 348 U.S. 19, 20 (1954); 5A Moore, *Federal Practice*, 2d ed. 1971, par. 52.03.

Las determinaciones del juzgador en este caso no son claramente erróneas ni arbitrarias y tienen apoyo suficiente en la prueba creída por el tribunal de instancia. Tampoco se demuestra que haya habido pasión, prejuicio o parcialidad. *Rodríguez* v. *Concreto Mixto, Inc.*, 98 D.P.R. 579 (1970).

En un caso de naturaleza distinta al de autos la Corte de Apelaciones de Nueva York hace unas manifestaciones que podemos adoptar para sostener la razón que fundamenta nuestra Regla 43.1, a saber:

> "Cara a cara ante los testigos de carne y hueso el juzgador de los hechos está colocado en una posición de ventaja de la cual los jueces de apelación están excluidos. En casos dudosos, el ejercicio de su poder de observación frecuentemente resulta ser el método más cabal para hallar la verdad. . . . ¿Cómo podríamos decir que el juez está errado? Nunca vimos los testigos. . . . La ley confía a la sofisticación y sagacidad del juzgador el deber de la ponderación." *Boyd* v. *Boyd*, 252 N.Y. 422, 169 N.E. 632, 634.

La situación planteada en este caso no justifica que se amplíe nuestra doctrina en las acciones filiatorias.