# 2000 DTA 164

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

EL PUEBLO DE PUERTO RICO
Apelado

v.

JOSE M. ECHEVARRIA COLON
Apelante

Núm. KLAN-99-00147

San Juan, Puerto Rico, a 22 de junio de 2000

Panel integrado por su Presidente, el Juez Miranda De Hostos
y los Jueces Rivera Pérez y Rodríguez García

Rodríguez García, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Por medio de un escrito de Apelación, comparece ante este Tribunal el convicto José L. Echevarría Colón *("Echevarría")*. Este nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el día 21 de enero de 1999. Mediante el referido dictamen, luego de que el día 9 de junio de 1998 un jurado lo encontrara culpable por haber cometido el delito de Homicidio Involuntario, Art. 86 del Código Penal, el foro judicial de primera instancia, Dimas G. Padilla Bruno, J., sentenció a Echevarría un año de reclusión, a ser cumplido bajo el régimen de una sentencia suspendida y, además, le suspendió la licencia de conducir por igual término.

Examinado en sus méritos el recurso que nos ha sido presentado, confirmamos la sentencia apelada.

**I. Trasfondo Fáctico y Procesal**

El día 20 de febrero de 1998, contra el apelante José M. Echevarría Colón se presentó una denuncia por la alegada comisión del delito de Homicidio Involuntario mediando negligencia crasa o temeraria en la conducción de un vehículo de motor, Art. 87 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4006. (Autos Originales, pág. 4). Por medio de la referida denuncia, a Echevarría se le imputó que, el día 5 de marzo de 1997, mientras conducía un vehículo de motor propiedad de la Autoridad de Energía Eléctrica y mediando imprudencia crasa o temeraria, entró de manera súbita y negligente a una vía principal. Según la denuncia, tales actos de Echevarría dieron lugar a que el perjudicado Héctor Rodríguez Acevedo perdiera el control de la motocicleta en que viajaba y luego fuera a estrellarse contra el vehículo conducido por el apelante, perdiendo la vida en el acto. *Ibid.* Además, surge del documento de Denuncia que el día 26 de febrero de 1998 se llevó a cabo una vista en la que se determinó causa probable para el arresto de Echevarría por el delito imputado y se le impuso una fianza de $100.00. *Ibid.*

Posteriormente, el día 20 de marzo de 1998, se celebró la correspondiente vista preliminar. (Autos Originales, pág. 2). En la referida audiencia, se encontró causa probable para acusar a Echevarría por el delito de Homicidio Involuntario, mediando mera negligencia en la conducción de un vehículo de motor. Art. 86 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4005.

El día 13 de abril de 1998, se llevó a cabo el acto de lectura de la acusación instada por el Ministerio Público contra Echevarría. (Autos Originales, pág. 14). En el transcurso de dicha audiencia, la defensa solicitó diez (10) días para que Echevarría sometiera su alegación, término que le fue concedido. Además, en dicho acto, la defensa anunció que el caso se vería por jurado y el tribunal anotó a Echevarría una alegación preliminar de no culpable. *Ibid.*

Luego de varios incidentes procesales, el día 13 de mayo de 1998, dio comienzo el proceso de desinsaculación del jurado ante el Tribunal de Primera Instancia. (Autos Originales, pág. 90). Dicho procedimiento de selección culminó con la juramentación de los miembros del jurado en una vista efectuada el día 14 de mayo de 1998. (Autos Originales, págs. 93-94). Durante la referida audiencia, Echevarría hizo alegación de no culpable y el Ministerio Público dio comienzo al desfile de su prueba. *Ibid.*

Terminado el acto del juicio y sometido el caso a la consideración del jurado, el día 9 de junio de 1998, el referido cuerpo deliberativo encontró a Echevarría culpable del delito de Homicidio Involuntario, con una votación de nueve (9) jurados a favor de dicho fallo y tres (3) en contra, por lo que el caso fue asignado al Oficial Probatorio para el correspondiente Informe Presentencia. (Autos Originales, pág. 117). Posteriormente, el día 21 de enero de 1999, el Tribunal de Primera Instancia dictó sentencia contra Echevarría y lo condenó a un año de reclusión con el beneficio de una sentencia suspendida. (Autos Originales, pág. 250). Además, en su dictamen, el foro sentenciador suspendió la licencia de conducir a Echevarría por el término de un (1) año.

Inconforme con la referida sentencia, oportunamente Echevarría presentó ante este Tribunal de Circuito de

Apelaciones, el recurso apelativo que hoy nos ocupa y en el que nos solicita la revocación del dictamen apelado. En suma, Echevarría alega que ante el tribunal sentenciador no se demostraron los elementos del delito imputado ni la culpabilidad del acusado más allá de duda razonable y que no se estableció en el acto del juicio que existiera identidad entre la persona perjudicada y el cadáver al que se practicó la autopsia. Además, el apelante arguye que el foro judicial de primera instancia erró en la apreciación de la prueba y al declarar no ha lugar las mociones de absolución presentadas por la defensa.

Luego de un análisis de los errores señalados, a la luz de la exposición narrativa de la prueba que nos ha sido sometida y del derecho aplicable, confirmamos la sentencia apelada.

## II. Derecho Aplicable

Es norma establecida en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación que de la prueba haya hecho un tribunal de primera instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Mercado Rivera, et. al. v. Universidad Católica de Puerto Rico,* ___ D.P.R. ___ (1997), **97 J.T.S. 106**; *Pueblo v. Meliá León,* ___ D.P.R. ___ (1997), **97 J.T.S. 110**; *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987); *Quintana Tirado v. Longoria,* 112 D.P.R. 276 (1982). Debe recordarse, sin embargo, que aunque el arbitrio del juzgador de hechos es respetable, no es absoluto, y que una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. *Méndez de Rodríguez v. González Molina,* ___ D.P.R. ___ (1996), **96 J.T.S. 149**; *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 D.P.R. 702 (1990); *Vélez v. Secretario de Justicia,* 115 D.P.R. 533 (1984); *Rivera Pérez v. Cruz Corchado, supra; Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826 (1978). Aunque haya evidencia que sostenga las conclusiones de hecho de un tribunal, si de un análisis de la totalidad de la evidencia el foro apelativo queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideramos claramente erróneas. *Méndez de Rodríguez v. González Molina, supra.* Véase además: *Cárdenas Maxán v. Rodríguez Rodríguez, supra; Abudo Servera v. A.T.P.R.,* 105 D.P.R. 728 (1977); *Sanabria v. Sucn. González,* 82 D.P.R. 885 (1961).

El Art. II, sec. 11 de la Constitución de Puerto Rico, establece una presunción de inocencia a favor de todo acusado, exigiéndose, para derrotar la misma, que toda convicción siempre esté sostenida por prueba que establezca la culpabilidad del acusado más allá de duda razonable. *Pueblo v. González Román,* ___ D.P.R. ___ (1995), **95 J.T.S. 86**; *Pueblo v. Pagán Santiago,* 130 D.P.R. 470 (1992), **92 J.T.S. 56**; *Pueblo v. Rosaly Soto,* 128 D.P.R. 729 (1991). Sin embargo, no se exige que se destruya toda duda posible, especulativa o imaginaria a los fines de establecer la culpabilidad del acusado. Es suficiente que el fallo del tribunal esté sostenido por prueba suficiente y satisfactoria que establezca certeza y convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Cabán Torres,* 117 D.P.R. 645 (1986); *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748 (1985). La duda razonable es aquella insatisfacción o intranquilidad en la conciencia del juzgador de los hechos sobre la culpabilidad del acusado, una vez desfilada la totalidad de la prueba presentada por el Ministerio Fiscal. *Pueblo v. Toro Rosas,* 89 D.P.R. 169 (1963). Sobre el criterio de duda razonable para determinar culpabilidad, en el caso de *Pueblo v. De León Martínez,* 132 D.P.R. 746 (1993), se expresó:

*"Es principio fundamental de nuestro sistema de derecho que la culpabilidad de un imputado de delito debe ser probada más allá de duda razonable. Pueblo v. Ortiz Morales, 86 D.P.R. 456 (1962); Pueblo v. Carrasquillo, 102 D.P.R. 545 (1974); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986). Esta máxima es consustancial con el principio de presunción de inocencia y es un elemento del debido proceso de ley. Pueblo v. Cruz Granados, 116 D.P.R. 3 (1984). Para cumplir con este requisito, se requiere que la prueba presentada sea "suficiente en derecho", lo que significa que la evidencia presentada tiene que producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Carrasquillo, supra; Pueblo v. Rodríguez Román, 128 D.P.R.___; 91 J.T.S. 26. La insatisfacción con la prueba es lo que se conoce como duda razonable y fundada. Pueblo v. Toro Rosas, 89 D.P.R. 169 (1963); Pueblo v. Cabán Torres, supra. La determinación de que se ha probado la culpabilidad más allá de duda razonable, es revisable en apelación como cuestión de derecho. Pueblo v. Serrano Nieves, 93 D.P.R. 56 (1966); Pueblo v. Pagán Díaz, 111 D.P.R. 608*

*(1981). Cuando un análisis ponderado de la prueba desfilada ante el foro de instancia nos produce duda razonable y fundada sobre si la culpabilidad del apelante ha quedado establecida más allá de duda razonable, este Tribunal no ha vacilado en dejar sin efecto un fallo condenatorio. Pueblo v. Cabán Torres, supra, pág. 657; Pueblo v. Rivero Lugo y Almodóvar, 121 D.P.R. [454] (1988)."*

Aunque la determinación de culpabilidad de un acusado es una cuestión mixta de hecho y de derecho, *Pueblo v. Echevarría I,* 128 D.P.R. 299 (1991); *Pueblo v. Cabán, supra,* el foro apelativo concede gran deferencia a la determinación que hace el juzgador de hechos a nivel de primera instancia y, de ordinario, no interviene con la misma en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Somarriba,* 131 D.P.R. 462 (1992); *Pueblo v. Maisonave,* 129 D.P.R. 49 (1991); *Pueblo v. Echevarría I, supra.* La razón de ser de esta norma es obvia, pues es el juzgador de los hechos quien tiene la oportunidad de observar el comportamiento de los testigos en la silla testifical, lo cual constituye un aspecto de vital importancia al momento de adjudicar credibilidad. *Pueblo v. Dávila Delgado,* ___ D.P.R. ___ (1997), **97 J.T.S. 68;** *Vélez Reboyras v. Secretario de Justicia,* 115 D.P.R 529 (1984); *Ortiz v. Cruz Pabón,* 103 D.P.R. 939 (1975); *Rodríguez v. Concreto Mixto, Inc.,* 98 D.P.R. 579 (1970). Por otro lado, es norma trillada en nuestra jurisdicción que la evidencia directa de un testigo que merezca entero crédito al juzgador es prueba suficiente para establecer la realidad de cualquier hecho. Regla 10 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10; *El Pueblo de Puerto Rico v. Chévere Heredia,* ___ D.P.R. ___ (1995), **95 J.T.S. 115;** *Pérez v. Acevedo Quiñones,* 100 D.P.R. 894 (1972).

Luego de un análisis detenido del presente recurso apelativo, somos del criterio de que no se cometieron los errores señalados y que procede confirmar la sentencia apelada. Del examen de la exposición narrativa de la prueba estipulada por las partes, se desprende que ante el Tribunal de Primera Instancia y el Jurado asignado al caso se desfiló prueba que de ser creída, como en efecto lo fue, es suficiente en derecho para sustentar la culpabilidad de Echevarría más allá de duda razonable.

Del testimonio vertido durante el acto del juicio por el testigo presencial de los hechos, Gabino Alicea Sánchez, se desprende que, mientras éste viajaba por la Avenida 65 de Infantería en dirección de Río Grande hacia Canóvanas, carril derecho, éste observó cómo la camioneta de la Autoridad de Energía Eléctrica *("AEE")* conducida por Echevarría cruzó su carril de derecha a izquierda desde una calle marginal y que tuvo que deternerse para no impactarla. El testigo declaró, además, que luego vio al motociclista perjudicado que viajaba por el carril izquierdo, también de Río Grande hacia Canóvanas, tratando de esquivar la camioneta conducida por Echevarría para no impactarla; que, al ver la motocicleta, Echevarría detuvo su marcha y volvió a reanudarla; que el motociclista perjudicado perdió el control de la motocicleta en que viajaba y cayó de la misma, impactando con su cuerpo a la camioneta de la AEE en su parte posterior izquierda. El testigo Alicea Sánchez añadió, también, que al momento del accidente, la parte delantera de la camioneta conducida por Echevarría estaba entre las dos isletas que dividen la avenida y que la parte trasera del vehículo ocupaba la mitad del carril izquierdo por donde transcurría el motociclista; que luego del accidente, bajó de su vehículo, se aproximó al occiso y observó como éste *"soltó un buche de sangre y murió"* y que, posteriormente, *"movieron la guagua".*

Por su parte, del testimonio del policía que investigó el accidente, agente Nieves Pérez Ortiz, surge que al llegar a la escena de los hechos pudo observar un cuerpo tendido en el carril izquierdo. Más adelante, a preguntas del Fiscal sobre cuál era la condición del motociclista accidentado Héctor Rodríguez, el testigo Pérez Ortiz indicó que para su entender dicha persona estaba sin vida.

El policía declaró, en parte, que como único testigo de los hechos pudo entrevistar en el lugar del accidente a Gabino Alicea Sánchez, quien identificó a Echevarría como la persona que conducía la camioneta de la AEE. El agente añadió que el testigo Gabino Alicea Sánchez le manifestó que la camioneta de la AEE se le cruzó de frente y que tuvo que parar para no chocarla; que el motociclista accidentado perdió el balance, se cayó de la motocicleta, dio varias volteretas e impactó al camión de la AEE que en esos momentos estaba cruzando la vía de rodaje; y que el impacto no había ocurrido donde estaba parado el vehículo de la AEE en ese momento (en medio de las isletas de la avenida, fuera de la vía de rodaje), sino más atrás.

**455**

Por su parte, la Dra. Lyvia A. Alvarez, patóloga forense y Directora del Instituto de Ciencias Forenses, declaró, en parte, haber realizado la autopsia al cuerpo del occiso Héctor Herminio Rodríguez Acevedo el día 6 de marzo de 1997, un día después del accidente. Como resultado de dicho procedimiento, la Dra. Alvarez concluyó que el perjudicado Rodríguez Acevedo murió a raíz de haber recibido un *"severo trauma corporal"*.

En cuanto a prueba documental se refiere, el Informe de Accidente preparado por el agente investigador Nieves Pérez Ortiz el día de los hechos, identifica a Héctor Rodríguez Acevedo como la persona que viajaba en la motocicleta accidentada. Allí se detalla que Echevarría cruzó la avenida sin tomar las debidas precauciones y que el motociclista Héctor Rodríguez trató de esquivarlo, por lo que perdió el control de la motocicleta e impactó el vehículo conducido por Echevarría, perdiendo la vida en el acto. Por su parte, las fotos tomadas en la escena de los hechos e identificadas como los Exhibits 3(c) por estipulación y 3(s) por estipulación, presentan la cartera y la licencia de conducir del occiso, identificándolo como Héctor H. Rodríguez Acevedo, número de seguro social 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 y número de licencia de conducir 1806143.

Por su parte, tanto el informe de autopsia como el informe toxicológico admitidos en evidencia como Exhibit IV, nuevamente, por estipulación de las partes, indican que los mismos corresponden al occiso Héctor H. Rodríguez Acevedo.

Finalmente, las fotos identificadas como Exhibits 3(o) por estipulación y 3(i), también por estipulación, tienden a confirmar lo declarado por el testigo Gabino Alicea Sánchez en el sentido de que el accidente ocurrió dentro de la vía de rodaje por donde transcurría el motociclista Héctor H. Rodríguez Acevedo, y que luego del accidente, la camioneta de la AEE fue removida del lugar de impacto.

Entendemos que a la luz de la evidencia reseñada, ante los miembros del jurado y el tribunal sentenciador, se desfiló prueba suficiente en derecho para sustentar un veredicto de culpabilidad contra Echevarría. El testimonio de Gabino Alicea Sánchez, unido al del agente Nieves Pérez Ortiz y al de la patóloga Dra. Lyvia A. Alvarez, tuvieron el efecto de establecer los elementos del delito de homicidio, consistentes en que los elementos del delito de homicidio, consistentes en que la actitud negligente de Echevarría al cruzar una vía pública sin tomar las debidas precauciones e invadir la vía de rodaje, provocó que el motociclista Héctor H. Rodríguez Acevedo perdiera el control de su motocicleta y fuera a estrellarse contra la camioneta conducida por Echevarría, perdiendo la vida.

Por otro lado, entendemos que la defensa no puede argumentar con éxito que el Ministerio Público no haya establecido la identidad entre el cadáver del motociclista Héctor H. Rodríguez Acevedo y aquél al cual la Patóloga Lyvia Alvarez realizó la autopsia. Una vez la defensa estipuló el Informe de Autopsia y el Informe Toxicológico rendido por personal del Instituto de Ciencias Forenses con respecto al cuerpo de una persona identificada en dichos documentos como Héctor H. Rodríguez Acevedo, también estipuló que el cadáver con respecto al cual se rindieron tales informes correspondía al motociclista accidentado el día de los hechos. Si la defensa tenía alguna duda en cuanto a dicho extremo, no debió dar su anuencia a la estipulación de los referidos informes.

Finalmente, la defensa de Echevarría llevó a cabo amplios contrainterrogatorios contra los testigos de la fiscalía y tuvo amplia oportunidad de confrontar a los mismos con alegadas contradicciones e inconsistencias en sus respectivos testimonios y, a su vez, de crear dudas en la mente del juzgador con respecto a la credibilidad y confiabilidad de aqueélos. El jurado, en este caso, tuvo ocasión de evaluar toda la prueba que le fue presentada, de observar el comportamiento credibilidad que le mereció cada uno de ellos, tomando en cuenta las fortalezas y debilidades de cada testimonio, luego de lo cual emitió un veredicto de culpabilidad contra Echevarría.

Por otro lado, no existe indicación alguna de que el panel de jurados ante el cual se ventiló el caso que nos ocupa, actuara movido por pasión, prejuicio, parcialidad ni que haya cometido manifiesto error al aquilatar la prueba que le fue presentada. Ante tales circunstancias, sus conclusiones merecen deferencia ante este foro apelativo, por lo que no intervendremos con las mismas.

Por los fundamentos antes expuestos, confirmamos la sentencia apelada.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau<br>
Secretaria General