# 2008 DTA 96

## TRIBUNAL DE APELACIONES
## REGIÓN JUDICIAL DE SAN JUAN-PONCE
## PANEL VI

WANDA SMITH
Recurrida

v.

GÓMEZ HERMANOS, KENNEDY, INC. Y POPULAR AUTO, INC.
Recurrentes

Núm. KLRA-2008-00800

San Juan, Puerto Rico, a 17 de julio de 2008

Panel integrado por su Presidente, el Juez Brau Ramírez,
la Juez Carlos Cabrera y el Juez Cortés Trigo

Cortés Trigo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El 4 de septiembre de 2004, la recurrida, Sra. Wanda Smith, adquirió de la recurrente, Gómez Hermanos Kennedy, Inc. (Gómez Hermanos), un vehículo de motor nuevo marca Audi, Modelo A4 del año 2004, mediante un contrato de arrendamiento financiero (*"lease"*) con Popular Auto, Inc. (Popular Auto). El vehículo tenía del fabricante una garantía básica de 4 años o 50,000 millas, lo que ocurriera primero.

En mayo de 2006, la recurrida empezó a sentir un cantazo fuerte y sonido en la parte delantera del vehículo y que tiraba hacia el lado. El 30 de mayo de 2006 la recurrida llevó el vehículo, que tenía 26,782 millas, al taller de servicio de Gómez Hermanos para que se evaluaran las condiciones del mismo. La recurrente realizó los siguientes trabajos: a) mantenimiento preventivo de las 25,000 millas; b) verificó, ajustó y lubricó la barra estabilizadora; c) reprogramó el beeper; y d) reemplazó los *"pads"* de los frenos traseros.

En septiembre de 2006, la recurrida llevó nuevamente el vehículo, el cual tenía 31,192 millas, al taller de servicio de la recurrente con las siguientes quejas: a) cristales delanteros de ambas puertas no funcionan, y b) el vehículo da un golpe al acelerar o al aplicar el freno. Gómez Hermanos hizo una orden de piezas para reparar los cristales y reemplazó la transmisión.

En octubre de 2006, el vehículo tenía 31,687 millas y fue llevado nuevamente a Gómez Hermanos porque daba un golpe en la transmisión. Posteriormente, el 17 de abril de 2007, la recurrida llevó el vehículo, que tenía 40,420 millas, al taller de servicio de la recurrente porque presentaba vibración al acelerar y al reducir la velocidad. Gómez Hermanos le entregó el vehículo a la recurrida el 16 de mayo de 2007, informándole que la gasolina estaba contaminada y había que limpiar el tanque y sugiriéndole cambiar las gomas. La recurrida no autorizó la limpieza del tanque de gasolina. Al cabo de unos días, la recurrida llevó el vehículo a otro mecánico, quien verificó el auto.

El 5 de junio de 2007, el vehículo tenía 41,018 millas y la recurrida lo llevó a Gómez Hermanos, luego de cambiar las gomas, indicando que continuaba con la vibración al acelerar. El vehículo permaneció en el taller hasta el 20 de junio de 2007. Al entregárselo, se le informó a la recurrida que se le había reemplazado nuevamente la transmisión al vehículo.

El 31 de julio de 2007, la recurrida presentó querella en el Departamento de Asuntos del Consumidor (D.A.C.O.) contra Gómez Hermanos y Popular Auto solicitando la resolución del contrato. El 23 de agosto de 2007, personal técnico del D.A.C.O. inspeccionó el vehículo y encontró que funcionó bien.

El 7 de septiembre de 2007, el vehículo tenía 44,143 millas y fue llevado al taller de Gómez Hermanos debido a que presentaba un ruido al encender el acondicionador de aire. Al revisar la unidad, la recurrente determinó que el filtro del acondicionador de aire se encontraba roto y se le indicó a la recurrida que aparentaba haber sido causado por ratones. Se le proveyó un estimado de reparación a ésta, pero ella no autorizó la reparación. El vehículo fue entregado el 11 de septiembre.

Luego de los trámites correspondientes, se celebró vista administrativa ante el D.A.C.O. En la misma, la recurrida estableció su inseguridad sobre el funcionamiento adecuado del vehículo y la incapacidad de Gómez Hermanos y su personal técnico para repararlo de forma satisfactoria. A la fecha de la vista administrativa, la condición intermitente de la vibración del vehículo se había manifestado nuevamente.

El 30 de abril de 2008, el D.A.C.O. emitió la Resolución recurrida, notificada el 6 de mayo del mismo año, declarando ha lugar la querella y decretando la resolución del contrato. Ordenó a Gómez Hermanos reembolsarle a la recurrida las mensualidades pagadas en el contrato de arrendamiento financiero y relevó a ésta de dicho

contrato mediante la cancelación del balance adeudado, luego de deducir una suma de dinero por concepto de depreciación del vehículo.

Popular Auto y Gómez Hermanos solicitaron reconsideración el 27 de mayo de 2008. Mediante resolución de 3 de junio de 2008, notificada el 10 del mismo mes y año, el D.A.C.O. denegó la solicitud de Gómez Hermanos y declaró ha lugar la de Popular Auto a los fines de reducir la suma a deducirse por concepto de depreciación.

Inconforme, el 10 de julio de 2008, Gómez Hermanos presentó ante nos un recurso de revisión administrativa. Además, el 14 de julio de 2008, Gómez Hermanos presentó una moción en auxilio de jurisdicción solicitando la paralización de la Resolución recurrida.

## II

La facultad revisora de los tribunales de las decisiones emitidas por una agencia administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999); *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 129 (1998); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, pág. 534.

La función revisora del tribunal, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.,* 146 D.P.R., a la pág. 129.

Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2101 y ss. *"Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."* 3 L.P.R. A. sec. 2175. Sin embargo, *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal." Id.*

El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como *"aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión." Ramírez v. Depto. de Salud,* 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. *Pacheco v. Estancias,* 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 437 (1997). Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ... no está justificada por una evaluación justa del peso de la prueba." Hilton Hotels v. Junta Salario Mínimo,* 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Véase, *Ramírez v. Depto. de Salud,* 147 D.P.R., a las págs. 905-906.

La recurrente se queja de que el dictamen recurrido no está sostenido por evidencia sustancial. Hemos considerado el recurso presentado y sus anejos y no encontramos base para intervenir con la decisión del D.A.C.O.

Las garantías requeridas a los fabricantes y distribuidores de vehículos de motor en nuestra jurisdicción están reguladas por la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 de 24 de septiembre de 1979 (Ley 7), 10 L. P.R.A. secs. 2051 y ss. El distribuidor autorizado es la persona que se dedica *"a la venta al detal o distribución de vehículos de motor de cualquier marca por concesión y autorización o acuerdo con el fabricante o su representante de fábrica en Puerto Rico."* Art. 2 (e), 10 L.P.R.A. sec. 2053 (e).

Conforme la Ley 7, el distribuidor autorizado que vende a un consumidor un vehículo de motor nuevo viene obligado a prestar efectivamente los servicios de garantía de fábrica. Art. 11, 10 L.P.R.A. sec. 2061. Las obligaciones y responsabilidades establecidas en la Ley 7 no relevan al fabricante, manufacturero, distribuidor o vendedor del vehículo de las responsabilidades legales establecidas en nuestro sistema de derecho. Art. 12, 10 L. P.R.A. sec. 2062.

Además, la Ley 7 asigna al D.A.C.O. la responsabilidad de implantar la Ley y adoptar reglamentación en esta área. Art. 13, 10 L.P.R.A. sec. 2063. Conforme esta facultad, el 30 de septiembre de 1992, el D.A.C.O. aprobó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797 (Reglamento). Véase, *Rodríguez v. Overseas Military*, 160 D.P.R. 270, 283 (2003). Este Reglamento fue sustituido por el Reglamento Núm. 7151 de 1 de junio de 2006.

La Regla 22 del Reglamento establece que el D.A.C.O. podrá, a opción del comprador, decretar la resolución del contrato de venta de un vehículo de motor o reducir proporcionalmente su precio de venta de acuerdo con las disposiciones del Código Civil, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábricas o fabricante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Además, esta disposición reglamentaria establece que el D.A.C.O. determinará lo que constituye oportunidad razonable de reparar tomando en consideración las circunstancias particulares de cada caso.

Esta disposición es consistente con las responsabilidades impuestas bajo el Código Civil de Puerto Rico a los vendedores de bienes muebles. *Pérez v. VPH Motors Corp.,* 152 D.P.R. 475, 488 (2000); *Ford Motor Co. v. Benet,* 106 D.P.R. 232, 238 (1977). Véase, además, Arts. 1054 y 1077 del Código Civil, 31 L.P.R.A. secs. 3018 y 3052.

El Artículo 37 del Reglamento, sin embargo, aclara que las disposiciones del Reglamento no limitan el derecho del consumidor a ejercer cualquier otra acción que le conceda la ley, incluyendo acciones de saneamiento por vicios ocultos y la acción redhibitoria. *Pérez v. VPH Motor Corp.,* 152 D.P.R., a la pág. 488. Ello es consistente con la doctrina adoptada por el Tribunal Supremo de Puerto Rico en el área contractual, que reconoce que los distintos remedios que provee la ley no son excluyentes, y que una persona agraviada puede ejercitar, de forma alternativa, cualquiera de las causas de acción que le ofrece el ordenamiento. Véase, *Márquez v. Torres Campos,* 111 D.P.R. 854, 866 (1982).

El Artículo 1373 del Código Civil, 31 L.P.R.A. sec. 3841, en este sentido, dispone que el vendedor de un bien viene obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se le destina o disminuyen este uso de tal modo que, de haberlo conocido el comprador, no la habría adquirido o habría dado menos precio por ella. Dicho precepto añade que el vendedor no será responsable por los defectos manifiestos o aquellos que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos. *Domínguez v. Caguas Expressway Motors,* 148 D.P.R. 387, 396 (1999).

El comprador tiene la opción de desistir del contrato o de solicitar una rebaja en la cantidad del precio. Art. 1375 del Código Civil, 31 L.P.R.A. sec. 3843; *Boyd v. Tribunal Superior,* 101 D.P.R. 651, 655-656 (1973).

En el caso de vehículos de motor, el Tribunal Supremo de Puerto Rico ha establecido que constituyen vicios redhibitorios o cuantiminosos aquellos defectos que excedan de las imperfecciones menores que cabe normalmente esperar en un producto de esta naturaleza. No es requisito que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor. *Pérez v. VPH Motor Corp.,* 152 D.P.R., a las págs. 489-490.

Aunque el defecto ha de ser oculto al momento de la compraventa, el Tribunal Supremo ha aclarado que ésta es una cualidad relativa. No se trata de que el defecto quede oculto en sentido literal, sino que lo sea para el comprador atendiendo sus características individuales. Esto significa que no será responsable el vendedor por los vicios ocultos cuando el comprador sea un perito que debiera fácilmente conocer los defectos por razón de su ocupación u oficio. *Polanco v. Cacique Motors,* 165 D.P.R. ___ (2005), **2005 J.T.S. 101**, a la pág. 1486. Para establecer la existencia de un vicio oculto, por lo tanto, el comprador no tiene que demostrar específicamente cuál o cuáles piezas están defectuosas. *Polanco v. Cacique Motors,* **2005 J.T.S. 101**, a la pág. 1487; *García Viera v. Ciudad Chevrolet, Inc.,* 110 D.P.R. 158, 163 (1980).

Debe recordarse que, por lo general, el comprador de un vehículo de motor no es un perito en mecánica automotriz. Basta con que establezca que el vehículo no funcionaba con normalidad y que el vendedor tuvo la oportunidad de corregir los defectos y no lo hizo. *Polanco v. Cacique Motors,* **2005 J.T.S. 101,** a la pág. 1487.

La apreciación sobre la importancia de los defectos constituye una cuestión de hecho a ser dilucidada por el juzgador de primera instancia, que es quien está en mejor posición para hacer dicha determinación. Un tribunal apelativo no intervendrá con su discreción sobre este particular en ausencia de prueba adecuada o error manifiesto. *Domínguez v. Caguas Expressway Motors,* 148 D.P.R., a la pág. 397; *D.A.C.O. v. Marcelino Mercury, Inc.,* 105 D.P.R. 80, 84-85 (1976).

En la situación de autos, según hemos visto, el vehículo de la recurrida tenía una garantía de cuatro años o 50,000 millas. El D.A.C.O. determinó que no era razonable que un vehículo que tenía unas 40,000 millas se le reemplazara la transmisión en dos ocasiones en un período de 8 meses, por lo que la querellada no había reparado el vehículo en forma satisfactoria y su incapacidad de determinar la causa del defecto ponía a la recurrida en riesgo de que el defecto recurriera luego de expirada la garantía. No estamos en posición de sustituir el criterio de la agencia sobre este particular.

Es evidente que las determinaciones del D.A.C.O. sobre este asunto están razonablemente sostenidas por la prueba desfilada ante dicho foro, la que refleja que el vehículo de la recurrida fue llevado al taller de servicio de Gómez Hermanos en innumerables ocasiones, sin que la causa del defecto en el automóvil hubiera sido determinada. Cabe presumir que la recurrente tuvo una oportunidad razonable de llevar a cabo lo anterior.

El D.A.C.O. ordenó la resolución de la venta y la devolución de las prestaciones, remedio que está expresamente contemplado por la Regla 22 del Reglamento y el Artículo 1077 del Código Civil, 31 L.P.R.A. sec. 3052. Por lo tanto, el D.A.C.O. concedió el remedio que procedía en derecho.

Por otro lado, la recurrente sostiene que descubrió evidencia sustancial que desmiente el testimonio de la recurrida porque ésta declaró en la vista que el auto tenía 44,000 millas y cuando ella llevó el vehículo a Gómez Hermanos 6 días más tarde tenía 3,000 millas adicionales. Entendemos que esta inconsistencia en el testimonio de la recurrida no es determinante. Una diferencia de poca monta en las millas que tenía el vehículo en nada afecta la conclusión del D.A.C.O. sobre la cual no hay controversia: se cambió la transmisión del vehículo en dos ocasiones en ocho meses y Gómez Hermanos no pudo determinar la causa del defecto.

De todos modos, según se conoce, en nuestro ordenamiento, la prueba directa de un testigo que merezca entero crédito al tribunal es prueba suficiente de cualquier hecho. Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10; *Pérez v. Acevedo Quiñones,* 100 D.P.R. 894, 899 (1972). El testimonio no tiene que ser perfecto para gozar de credibilidad; las inconsistencias en cuanto a detalles no implican que deba descartarse el resto de la declaración. *Pueblo v. Chévere Heredia,* 139 D.P.R. 1, 15-16 (1995).

La recurrente plantea, además, que el D.A.C.O. no tenía una grabación completa de la vista administrativa, lo que infringía su derecho establecido en la LPAU de que la decisión se basara en el expediente y a una revisión judicial adecuada al no permitirle refutar la corrección del dictamen recurrido. No tiene razón.

Ciertamente, las partes en los procedimientos administrativos gozan, entre otros, del derecho a que la decisión esté basada en el expediente administrativo. Art. 3.1 de la LPAU, 3 L.P.R.A. sec. 2151; *Magriz v. Empresas Nativas,* 143 D.P.R. 63, 70 (1997). Lo que esto significa es que el dictamen administrativo se base en la prueba y materias oficialmente admitidas en la vista, lo que se tomó conocimiento oficial y todo lo que sucedió en la vista. *Comisionado v. A.E.E.L.A.,* 171 D.P.R. ___ (2007), **2007 J.T.S. 118,** a la pág. 1646. No puede adjudicarse la controversia a la luz de evidencia secreta que no ha sido notificada a las partes ni se ha brindado oportunidad de rebatirla. *Torres Ramos v. Policía de P.R.,* 143 D.P.R. 783, 796 (1997); *López y Otros v. Asoc. de Taxis de Cayey,* 142 D.P.R. 109, 114-116 (1996). Por lo tanto, el hecho de que no estuviera disponible la totalidad de la grabación de la vista no quiere decir que la decisión del D.A.C.O. no estuvo basada en el expediente administrativo. Como hemos visto, la Resolución recurrida se fundamentó en la prueba que presentaron las partes en la vista administrativa y la recurrente ni siquiera aduce que la agencia consideró prueba ajena al récord para tomar su decisión.

Por último, tampoco estimamos que la falta de la totalidad de la grabación afectó el derecho de la recurrente de su derecho a revisión judicial. La recurrente no indica específicamente cómo se le afectó tal derecho en este caso. De hecho, hemos considerado antes sus planteamientos sobre la ausencia de evidencia sustancial y determinado que los mismos no procedían. Por lo tanto, procede confirmar el dictamen recurrido.

### III

Por los fundamentos expuestos, se dicta sentencia confirmando la Resolución recurrida y denegando la moción en auxilio de jurisdicción

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones