LUIS RODRÍGUEZ ROLÓN, peticionario, *v.* EL TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JAIME FRANK PAGANACCI, JUEZ, demandado.

*Número:* CE-63-30      *Resuelto:* 1 de marzo de 1965

*José M. Canals,* y *Miguel A. Velázquez Rivera,* abogados del peticionario; *J. B. Fernández Badillo, Procurador General,* y *Jenaro Marchand, Procurador General Auxiliar,* abogados del demandado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Con arreglo a lo dispuesto por la Sec. 5-201 de la Ley de Vehículos y Tránsito de Puerto Rico, 1960, será culpable de conducción temeraria toda persona que conduzca un vehículo de motor

(1) de manera descuidada y atolondrada, despreciando desconsideradamente los derechos y la seguridad de otras,

(2) sin el debido cuidado y circunspección,

(3) de una manera que ponga o pueda poner en peligro las vidas o propiedades, o

(4) que mediante el manejo negligente causare daño a otra persona.

Con motivo de un accidente de tránsito ocurrido a las nueve de la mañana del jueves 31 de mayo de 1962, en la Avenida Borinquen de Santurce, se formuló denuncia contra el recurrente Luis Rodríguez Rolón, ante la Sala de San Juan

del Tribunal de Distrito, por una violación a la indicada Sec. 5-201, consistente en que

". . . mientras conducía por el sitio indicado, no tuvo en cuenta el ancho, condiciones, uso y tránsito de la referida vía pública por la cual manejaba su vehículo de motor, ni tampoco midió bien la distancia al pasarle al vehículo marca Ford . . . que estaba estacionado en la referida Avenida Borinquen . . . y por falta de cuidado y circunspección en el uso y manejo de su vehículo . . . chocó al vehículo marca Ford . . . resultando éste con daños de consideración. En el accidente resultó con contusiones el Sr. Jesús Rivera, policía estatal, siendo atendido en el Hospital Professional Building . . . de Santurce."

Fue el caso a juicio el 2 de noviembre de 1962. La prueba de cargo consistió principalmente en el testimonio oral del policía lesionado. El denunciado aceptó la ocurrencia del accidente; como defensa sostuvo que en el mismo no había participado consciente ni intencionalmente y que se debió a que segundos antes del accidente se había quedado dormido debido a un estado de agotamiento físico y mental y a no haber dormido durante las 45 horas inmediatamente precedentes. [1]

---

[1] La parte pertinente de su declaración en juicio fue como sigue:

"P. Dígame, don Luis, ¿dónde estaba usted en la mañana del 31 de mayo de 1962?

R. Bien. Terminé de trabajar de una jornada de trabajo en el Hotel San Juan, a las 6:30 de la mañana. En lo que nos cambiamos de ropa salimos de ahí a las 7:00. Tuve que llevar a un compañero de trabajo a la urbanización La Riviera . . . dicho sea de paso ¿verdad? estuvo lloviendo toda esa mañana ¿verdad? por lo cual no se podía caminar ligero y me tomó bastante tiempo ir allá y regresar para atrás. Cuando llegué a la intersección de la parada 26 entre la Avenida Borinquen y la Ponce de León doblé hacia la derecha; al doblar a la derecha llegué hasta la esquina de la calle 5 y la calle 6 frente al Teatro Apolo ¿verdad? y de momento me sucedió algo inesperado ¿verdad? con el reflejo del sol o algo en ese momento . . . me dormí. Y ahí yo no supe lo que pasó . . . hasta que el impacto del choque me despertó. Entonces al lograr mi conciencia noté que había chocado un carro que estaba al lado derecho de la carretera; el policía que estaba adentro salió a preguntarme qué había pasado; inmediatamente pues, le contesté que me había quedado dormido.

P. ¿Usted pudo dormir entre el día 29 y el día 30?

No señor.

P. ¿Por qué? Explíqueme primero por qué no pudo dormir.

El tribunal de origen lo declaró culpable de una infracción a la citada Sec. 5-201 y lo multó en $150.00 ó 90 días de cárcel. Interpuso apelación para ante el Tribunal Superior, Sala de San Juan y a los fines de la misma se preparó y aprobó por el juez sentenciador la siguiente:

"RELACIÓN DEL CASO. La vista de este caso se celebró el día 2 de noviembre de 1962. La defensa estuvo a cargo del Licenciado José N. Canals. El Pueblo inició su caso con la declaración del testigo Jesús Rivera Morales quien en resumen declaró como sigue: Que su nombre es Jesús Rivera Morales. Que es Policía Estatal. Que el día 31 de mayo de este año como a las 9:00 de la mañana estaba estacionado en un automóvil de la Policía en la Avenida Borinquen de Barrio Obrero. Que conoce al acusado desde el día de los hechos. (Lo señala en Corte abierta.) Estando bien estacionado a su derecha en dicha Avenida 'vino' una guagua y le dio 'un cantazo' por la parte izquierda trasera al automóvil donde estaba el declarante. Que desde entonces el declarante está hospitalizado por los golpes que recibió en ese choque.

Motivos de necesidades perentorias, ¿verdad? para el uso personal de mi persona me obligaron a salir del trabajo el día 29 amanecer del día 30. Al llegar a casa a las 7:30 de la mañana se me informó que debía ir a recoger mi carro que estaba arreglándose en el taller de Luis Carrillo en Hato Rey al lado del cuartel de la policía. Entonces inmediatamente me personé al taller de reparación pero al llegar allí a las 9 de la mañana, pues, el Sr. Carrillo no estaba, que es quien debía entregarme mi carro. Entonces opté por esperar hasta que él llegara y en eso dieron las doce del día. Pero al llegar él me informó que faltaban algunos artefactos que ponerle al carro y demás y entonces me dijo "Espera un momento que los ponemos dentro de un rato." Pero ese rato se prolongó hasta las 4:30 ó 5:00 de la tarde. Entonces por la necesidad que tengo de mi carro para mi uso personal pues esperé para llevármelo. Entonces regresé a casa para bañarme y cambiarme de ropa y regresar otra vez al trabajo, porque el hecho de que estos bailes duraran hasta tarde en la mañana no quiere decir que no se empezara temprano. La razón es porque hay que tener el salón preparado para cuando empieza el baile que empieza a las diez, a las 10:30 ó a las 11:00 de la noche cuando terminan las coronaciones del mismo, del rey, de la reina.

P. ¿Usted tiene familia?

Tengo mucha familia.

P. ¿Cuántos hijos tiene?

Tengo siete hijos.

P. ¿Usted llevaba cuántas horas trabajando?

Bueno, un promedio de cuarenta y pico de horas."

Que como resultado del choque el automóvil de la Policía quedó con la parte izquierda trasera destrozada. En el contrainterrogatorio el testigo dijo que el accidente ocurrió a las 9:30 de la mañana. Que el automóvil del acusado corría de oeste a este. Que el sol no estaba tan brillante a esa hora. Que vio al acusado en el sitio del choque. Que el acusado manejaba una guagua colorada marca Dodge. Que la guagua quedó chocada en todo el guardalodo derecho delantero. Que el acusado venía solo. El Pueblo declaró éste su caso y puso los demás testigos a disposición de la defensa. La defensa llamó entonces al testigo José M. García quien declaró sosteniendo lo mismo que el testigo Jesús Rivera Morales, pero añadió que el acusado dijo en el lugar de los hechos que se había quedado dormido mientras guiaba y que a eso se debió el accidente. El próximo testigo de la defensa fue el propio acusado quien hizo un relato de las horas que había trabajado consecutivamente de noche y de día y las razones que tuvo para no poder dormir el día ni la noche antes del accidente. Manifestó que segundos antes del accidente se había quedado dormido mientras guiaba su guagua. Antes de someter su caso el abogado de la defensa hizo una prolongada exposición sobre la teoría de que la persona dormida no puede cometer delito. Que si dicha persona realiza un acto delictivo no podría responsabilizarse criminalmente ya que faltaría el elemento de intención. Presentó una larga lista de comentaristas sobre la materia. Así pidió la absolución del acusado. Le fue negada. Por la prueba creída el Tribunal declaró culpable al acusado de una infracción a la sección 5-201 de la Ley 141 de 1960, y le impuso una pena de $150.00 de multa ó 90 días de cárcel sin costas."

El 2 de julio de 1963, después de celebrada la vista oral en apelación, la Sala de San Juan del Tribunal Superior dictó la siguiente sentencia:

"SENTENCIA. La vista oral relacionada con esta apelación se ventiló el día 1ro. de julio de 1963. En su argumentación el apelante reiteró el error previamente señalado en su alegato. Este error se basa en que de acuerdo con la prueba que tuvo ante sí la sala sentenciadora el acusado, hoy apelante, se encontraba dormido en el momento de la ocurrencia del accidente motivador de la denuncia. Este hecho—estar entregado al sueño—lo considera como un eximente de responsabilidad criminal. No es-

tamos de acuerdo. Si el apelante estaba consciente de su cansancio físico y de su fatiga mental no ha debido asumir la responsabilidad de conducir un vehículo de motor. Al hacerlo fue crasamente negligente y debe responder de la consecuencia natural de su acto imprudente. Se confirma la sentencia apelada."

Para revisar esos procedimientos libramos auto de *certiorari*. Sostiene el peticionario que el tribunal sentenciador erró al no determinar que estuviera dormido en el preciso instante del choque y al negarse a absolverlo bajo el fundamento de no ser, en tal situación, responsable criminalmente.

Admite que en lo primero se trata de una cuestión de apreciación de la evidencia aportada, pero que, no obstante ello, no existió motivo para no haber creído su testimonio. Por las razones que más adelante expondremos, de haberse cometido error por no concluirse que estuviera dormido, ello no sería base suficiente para alterar la sentencia recurrida.

La contención principal del peticionario, bajo el supuesto de que se hubiera determinado que estaba dormido, es que cometió el acto que se le imputa sin tener conciencia de ello, sin intención criminal, y por tanto no era penalmente responsable a la luz del inciso 6 del Art. 39 del Código Penal.

Su distinguido letrado nos ha presentado dos alegatos muy interesantes sobre las modernas teorías en torno a la responsabilidad penal por actos u omisiones cometidos por "los enfermos de la mente, los que sean sonámbulos, los que deliran en la fiebre y los que perpetran una infracción en el estado crepuscular del sueño", con citas de comentarios de insignes penalistas. No obstante el gran valor científico de esas doctrinas, no hemos quedado convencidos de que, a la luz de las circunstancias concurrentes, al denunciado no se le pudiera imputar, por irresponsabilidad penal, la comisión de esa infracción a dicha Sec. 5-201.

Resumamos las circunstancias del caso. El peticionario Luis Rodríguez Rolón, es un mozo de hotel; como tal ha trabajado muchos años. Para fines de mayo de 1962, época de las fiestas de graduaciones escolares, servía en el Hotel San Juan.

El martes 29 de mayo, con motivo de esas fiestas, trabajó en ese hotel desde el mediodía hasta las seis y treinta de la mañana del miércoles siguiente, 30 de mayo; llega a su hogar a las siete y media de esa mañana; en vez de entregarse al sueño, va a un taller de Hato Rey a buscar su automóvil que se estaba reparando allí; en espera de que termine la reparación permanece en ese taller hasta las cinco de la tarde del miércoles; a esa hora regresa a su casa; se baña, cambia de ropa y vuelve a su labor al comenzar la noche; trabaja toda la noche del miércoles; sale del hotel a las siete de la mañana del jueves día 31 de mayo; en esa mañana del accidente, según narra a la pág. 6 de su segundo alegato, conduciendo su automóvil, *"salió de su trabajo con sueño y cansancio, pero se tomó un café y pensó que no tendría dificultad en guiar, . . . anteriormente, se había visto obligado a conducir en idénticas circunstancias de sueño y cansancio y nunca se había quedado dormido guiando"*; a pesar de ello, no va directamente a su casa, sino que lleva, desde el hotel y hasta una urbanización bastante retirada, a un compañero de labores; observó que "estuvo lloviendo toda esa mañana", razón por la cual "no se podía caminar ligero y me tomó bastante tiempo ir allá y regresar para atrás'; cuando llega, por la Avenida Ponce de León, a la parada Martín Peña, dobla hacia la derecha y toma la Avenida Borinquen y al pasar frente al teatro Apolo "de momento me sucedió algo inesperado . . . con el reflejo del sol o algo en ese momento . . . me dormí . . . y ahí . . . no supe lo que pasó . . . hasta que el impacto del choque me despertó . . . ."

Como resultado de ese choque el automóvil de la Policía quedó con la parte izquierda trasera destrozada, y se lesionó el policía Jesús Rivera Morales, teniendo que ser conducido a un hospital para ser curado.

■ Ese cuadro de hechos es bastante para concluir que Rodríguez Rolón desde que salió del trabajo "con sueño y cansancio" y mientras conducía, tenía pleno conocimiento

de su estado de agotamiento físico, de su fatiga mental, de su prolongada pérdida de sueño, una clara conciencia de las condiciones de la vía pública por donde transitaba y de la posibilidad o probabilidad de caer rendido por el sueño mientras guiara. Sin duda alguna, al conducir en esa forma atolondrada su vehículo a lo largo de céntricas avenidas, en horas de mayor tránsito—durante el regreso de un viaje de amistad que no estaba obligado a realizar y que aumentaba su cansancio físico—lo hizo en grave desprecio de los derechos y seguridad de las personas, puso en peligro las vidas o propiedades y mediante su manejo negligente finalmente causó daños a determinada persona.

Esa conducta, observada antes de dormirse, a la luz de la Sec. 5-201 de la Ley de Vehículos y Tránsito, constituye conducción temeraria. El dormirse, fue precisamente, uno de los resultados previstos de su renuencia a entregarse al sueño normal y de su error al creer que, después de unas cuarenta y cinco horas sin dormir, podía evitar dormirse con una simple taza de café. No se trata de un caso fortuito, ni de consecuencias imprevisibles.

■ Aunque controvertiblemente, se presume que toda persona intenta la consecuencia ordinaria de un acto cometido por ella voluntariamente. No puede argüirse que la conducta observada por el peticionario hasta el preciso momento en que se duerme, no fue voluntaria. Desde que él, por su cuenta comenzó a conducir, no obstante su estado de agotamiento, cansancio, fatiga mental y prolongada falta de sueño, se convirtió en una amenaza o peligro potencial para la seguridad y vida de las demás personas circulantes por esas vías públicas. El conductor que por su conducta crea un peligro para los que por ellas transitan, no puede negar que tuvo la intención de producir daños a cualquier persona y sus propiedades, aunque no la tuviera para una determinada. La potencia del impacto y las lesiones del policía demuestran que

el denunciado conducía, bajo tales condicionés, a bastante velocidad por la Avenida Borinquen.

La falta del debido cuidado y circunspección convierte a todo vehículo en un instrumento potencial de destrucción y muerte. Uno de los objetivos cardinales o básicos de nuestro estatuto sobre el tránsito es la seguridad pública. A tono con ello exige entre otras cosas, que toda persona que conduzca un automóvil debe estar capacitada mental y físicamente para ello y que sea persona de solvencia moral suficiente para conducir un vehículo con la debida consideración para la seguridad pública—Sec. 3-103; que debe ejercer en todo momento el "debido dominio del vehículo"—Sec. 5-101—y realizar una conducción segura—Sec. 5-102, y ha declarado conducción temeraria todos los actos enumerados en su Sec. 5-201, cuya aplicación aquí está envuelta.

En su sentencia de 21 de mayo de 1949 interpretando disposiciones del Código de Circulación español, tiene declarado el Tribunal Supremo de España que los síntomas del sueño normal jamás se presentan de manera inesperada, súbita e instantánea. (²)

---

(²) En la obra *"Los Accidentes de Automóvil"*, del jurista español Juan Canals Martí, Casa Editorial Bosch, Barcelona, 1957, y bajo el subtítulo "Somnolencia", págs. 87–89, encontramos los siguientes resúmenes de tres sentencias sobre la materia dictada por ese tribunal:

"Concurren en el hecho objeto de los probados de la sentencia recurrida los tres elementos que establece la doctrina de esta Sala, como característicos del delito de imprudencia, cuales son una acción u omisión voluntaria no maliciosa, un daño efectivo y concreto y la relación de causa a efecto entre aquélla y éste, hallándose constituido el primer elemento por la voluntaria insistencia del recurrente en la conducción del camión de referencia y sin disminuir su velocidad no obstante sentirse invadido por los síntomas del sueño cuya presencia en el organismo normal jamás se presentan de manera inesperada, súbita e instantánea y por consiguiente, aquél en la mencionada ocasión pudo y debió haber previsto adoptando las oportunas medidas que el inevitable estado de inconsciencia que le amenazaba se reflejaría como se reflejó en los mandos del camión que manejaba con la consiguiente deficiencia y consecuencias perfectamente previsibles, el segundo elemento se halla a su vez constituido por las lesiones y daños que se relatan y nadie desconoce.

"En consecuencia de lo expuesto en los anteriores razonamientos no

La Sec. 5-201 se titula "Imprudencia o Negligencia Temeraria." Tipifica como conducción temeraria, el manejo atolondrado, la falta del debido cuidado y circunspección, la manera

procede apreciar en el caso que nos ocupa la circunstancia eximente octava del artículo 8° del Código Penal, como pretende el recurrente, porque éste al notar los primeros síntomas de sueño en aquella ocasión debió detener el camión que conducía y adoptar las demás precauciones oportunas, pues no podía desconocer por propia e ineludible experiencia que el sueño se anuncia con inequívocos síntomas y que no tarda en manifestarse más intensamente con el embotamiento de los sentidos de la vista y oído, relajando al mismo tiempo la tensión muscular y reduciendo notablemente la actividad física y mental del sujeto, que así queda ausente del medio que le rodea; y al prescindir voluntariamente el recurrente de adoptar aquellas determinaciones que su situación personal reclamaba urgentemente en evitación de los graves peligros que implicaban su estado, realizó un acto totalmente ilícito que le excluye de los beneficios que pretende. Sentencia 21 mayo 1949.—Col. Leg. 200.

"Es en absoluto inaplicable la doctrina del caso fortuito al que es objeto de estudio, porque si bien es acto lícito para el que está reglamentariamente autorizado, el conducir un vehículo de motor mecánico, no obra con la debida diligencia, al hacerlo, si se halla en estado de agotamiento físico consecutivo a no haber dedicado al sueño, las noches anteriores, el tiempo normal para el descanso del organismo y precisamente debido a ello el ponerse en camino y dormirse, da lugar a que el coche se despistara y cayera sobre la cuneta de la carretera, con detrimento corporal de sus ocupantes y como ese hecho causa temeridad porque es previsible y a nadie puede pasar desapercibida la posibilidad de que al emprender el viaje en esas desfavorables condiciones se corría el riesgo de que rendido por el cansancio se viese invadido por el sueño con peligro evidente para la integridad personal de los usuarios de ese medio de locomoción y de los de las vías por donde circulase, máxime tratándose de un largo recorrido durante las horas de la noche y existe una adecuada relación causal entre el acto de suma imprudencia de conducir un automóvil en esas circunstancias y que el mal efectivo que esa notoria imprevisión originó. Sentencia 3 marzo 1951.—Col. Leg. 105.

"Es altamente temerario conducir un vehículo de motor mecánico, de madrugada, en estado de agotamiento consecutivo a demasiadas horas de conducción, pues en esas deplorables condiciones no es posible ser dueño en todo momento del movimiento del mismo ni estar atento a las múltiples incidencias del incesante tráfico urbano e interurbano que requieren en el conductor la máxima diligencia y el más extremado celo, para salvar los obstáculos que frecuentemente se presentan y evitar la producción de daños en las personas o en sus patrimonios y claro es que cuando se conduce un camión por las carreteras a altas horas de la noche, rendido por el cansancio de una intensa y prolongada jornada, es natural que las fuerzas falten, que en algunos momentos se pierda la conciencia del trabajo a que se está sometido y que el sueño nuble en ocasiones la vista panorámica del camino

de conducir que ponga o *pueda poner* en peligro las vidas o propiedades y el manejo negligente que cause daño a otra persona.

No es por lo que él hizo o pudo haber hecho mientras se encontraba dormido que se le denunció y condenó, sino por su precedente conducta imprudente al decidir guiar en ese estado, por su descuido y falta de tomar las medidas que su estado aconsejaban tomarse y al no evitar que ocurriera lo que él había previsto que podría ocurrir. Como acertadamente expresó el Tribunal Superior: "Si el apelante estaba consciente de su cansancio físico y de su fatiga mental no ha debido asumir la responsabilidad de conducir un vehículo de motor. Al hacerlo fue crasamente negligente y debe responder de la consecuencia natural de su acto imprudente."

*Se anulará el auto expedido.*

---

que debe ser cuidadosamente observado, para adoptar, en cada caso, las medidas que procedan y que garanticen la circulación normal, expuesta siempre a peligrosos riesgos que pueden y deben preverse; por eso, el conducir un vehículo en tales condiciones, como lo hizo el procesado, supone una manifiesta temeridad, calificativo que no puede degradarse a mera imprudencia con infracción de reglamentos, porque la actuación del agente represente la del artículo 17 del Código de la Circulación, por ser doctrina jurisprudencial que la infracción de normas reglamentarias, sólo determine en el caso de imprudencia simple, la elevación del hecho de falta a delito, pero no impide la calificación de la imprudencia temeraria cuando su gravedad lo requiera y así se estima en el caso que se contempla, puesto que si el procesado hubiese realizado su cometido en plenas condiciones de aptitud física, después de un necesario descanso, no se habría producido el resultado dañoso y como todo conductor debe ser consciente de la responsabilidad que sobre él pesa, precisa que antes de emprender un largo recorrido mida sus fuerzas y comprenda si se halla capacitado para resistir muchas horas de camino, pendiente de las contingencias que de continuo surgen; si se aventura a realizar un viaje en deficientes condiciones físicas, procede temerariamente y está bien encuadrada su conducta originaria del mal causado, en el ámbito del párrafo primero del artículo 565 del ordenamiento jurídico, acertadamente por la Sala de instancia. Sentencia 9 marzo 1955.—R. 558."