# 2006 DTA 73

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

EL PUEBLO DE PUERTO RICO
Apelado

v.

ANTONIO CUESTA GUEVARA
Apelante

Núm. KLAN-2005-00752

San Juan, Puerto Rico, a 21 de abril de 2006

Panel integrado por su Presidente, el Juez Martínez Torres, el Juez Brau Ramírez y la Juez Fraticelli Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Por hechos ocurridos en el Expreso De Diego en Bayamón en la noche del 18 de marzo de 2004, el apelante Antonio Cuesta Guevara fue acusado por una infracción al Artículo 5.08 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5128, por negligencia temeraria al conducir un vehículo de motor.

Al apelante se le imputó haber ocasionado un accidente, al impactar con su automóvil el vehículo que conducía la perjudicada, Anais Nieves.

Luego de un juicio por tribunal de derecho, el apelante fue declarado culpable del delito imputado.

El 5 de mayo de 2005, fue condenado a pagar una multa de $1,000 y a restituir a la perjudicada $3,000 por los daños ocasionados al automóvil de ella.

El apelante solicitó la reconsideración del dictamen del Tribunal, la que fue denegada por el foro de Primera Instancia mediante resolución emitida el 24 de mayo de 2005.

Confirmamos.

### II

Existe controversia entre las partes sobre cómo ocurrió el accidente.

Durante el juicio, la perjudicada Anais Nieves, de 19 años de edad, declaró que para la fecha de los hechos, ella trabajaba en una tienda de comida localizada en el Centro Comercial Río Hondo. Su supervisor era un individuo de apellido Maysonet.

La perjudicada tenía un vehículo Mitsubishi Mirage de 1995, color rojo. El automóvil tenía un choque anterior en el guardalodos frontal izquierdo. La perjudicada no tenía seguro.

La perjudicada reside en Toa Alta. La noche de los hechos, como a las 10:10 p.m., salió de su trabajo y montó su automóvil para dirigirse a su casa. Iba sola.

Aparentemente, los otros empleados del negocio también se marcharon a su casa en ese momento, incluyendo al Sr. Maysonet.

La perjudicada entró en el Expreso de Diego en dirección hacia Arecibo, utilizando la entrada que queda al frente del Centro Comercial. El Expreso cuenta con tres carriles en esa área. La perjudicada entró por el carril de la derecha, luego cambió al del centro y finalmente al de la extrema izquierda.

Según su testimonio, la perjudicada conducía a 45 a 50 millas por hora. Tardó entre 25 ó 30 segundos en cambiar de carriles. En ese momento, las condiciones del tiempo eran normales. No estaba lloviendo ni había neblina en la carretera. La perjudicada miraba hacia el frente. No vio otros automóviles.

Poco después de entrar en el carril de la izquierda, la perjudicada escuchó un frenazo y sintió un fuerte impacto en la parte posterior de su vehículo. La perjudicada perdió el control de su automóvil que comenzó a dar vueltas y fue a impactar la valla de seguridad ubicada en el lado derecho del Expreso. El automóvil impactó la valla con su parte trasera. Quedó mirando hacia Arecibo.

Como consecuencia del impacto, la perjudicada quedó aturdida. Sintió que le tocaban en el cristal de la puerta y vio que era el Sr. Maysonet, quien venía varios carros detrás de ella y quien se detuvo al ver que la habían chocado. El Sr. Maysonet le preguntó a la perjudicada que cómo se sentía. Ella le dijo que le dolía la espalda. El trató de abrir la puerta del conductor y no pudo y se montó en el carro de la perjudicada por el asiento del pasajero. Le dijo a la perjudicada que se quedara allí y que iba a llamar una ambulancia.

La perjudicada vio que el carro que la había chocado era un BMW gris, que había quedado en la isleta del medio. El apelante, quien era el que lo estaba conduciendo, se le acercó y le preguntó que si estaba bien.

Posteriormente, llegó una ambulancia. La perjudicada también fue entrevistada por el agente Jerry Cruz de la Policía.

La perjudicada fue llevada a un hospital, donde recibió tratamiento. No tuvo lesiones y fue dada de alta al otro día.

Su vehículo fue llevado en grúa a su casa. A los dos días, ella le tomó varias fotografías, que fueron admitidas en evidencia.

Le dio su versión de los hechos al agente Cruz, quien decidió presentar el caso.

Por su parte, el apelante declaró que era gerente general de la compañía Gatsby. Para la fecha de los hechos era Gerente del Caribe para la compañía WARNACO.

El día de los hechos, el apelante había ido, en unión a varios empleados, a la tienda J.C. Penney ubicada en Plaza del Caribe en Ponce para gestiones relacionadas con su empleo, específicamente para atender el área de Calvin Klein de la tienda.

Para esa fecha, el apelante tenía un automóvil BMW gris modelo 325 de 2003. El vehículo era relativamente nuevo. Había sido utilizado por el apelante por tan sólo dos meses y medio. El automóvil estaba asegurado por PRAICO. Tenía *"full cover."*

A las ocho de la noche, el apelante se dirigió de vuelta al área metropolitana. Lo acompañaban tres personas, Lourdes Torres, Jorge Ramírez y Zulma Díaz.

El apelante conducía el automóvil. La Sra. Zulma Díaz viajaba al frente, en el asiento del pasajero. El Sr. Ramírez iba en la parte de atrás del automóvil, detrás de la Sra. Díaz, mientras que la Sra. Torres iba sentada detrás del apelante. Se dirigían a la casa de la Sra. Torres, quien vivía en Toa Baja, donde los otros empleados habían dejado sus automóviles.

El grupo tomó el Expreso Las Américas. Al llegar al área metropolitana, tomaron por el Expreso de Diego en dirección hacia Arecibo. Conducían por el carril central. Había poco tránsito. Según el apelante, iban a velocidad moderada, sin apuro. Aunque habían trabajado todo el día, el apelante no se sentía extenuado. No había consumido bebidas alcohólicas ni medicinas.

Poco después de pasar la entrada de Río Hondo, sintió un impacto en el lado trasero izquierdo del automóvil. Fue un impacto lateral.

Debido al empujón, el apelante perdió el control de su vehículo, que se viró y fue a dar contra la valla del centro del Expreso. El vehículo impactó la valla por la parte frontal izquierda, siguió girando e impactó la valla nuevamente por la parte de atrás. El automóvil quedó con la parte trasera pegada a la valla con una ligera inclinación hacia atrás, hacia San Juan.

Le preguntó a sus acompañantes que cómo estaban. Ninguno se había lesionado. Se bajaron del vehículo.

El apelante cruzó el Expreso y se acercó al automóvil de la perjudicada, que había quedado en el otro lado de la carretera, pegado a la valla. El Sr. Maysonet estaba allí.

El apelante le preguntó a la perjudicada que cómo se sentía. Ella le contestó que estaba un poco aturdida.

Según el apelante, él le preguntó a la perjudicada que qué le había pasado y ella le dijo que se había bajado a buscar el celular y que cuando subió la cabeza y se dio cuenta ya estaba encima del vehículo del apelante. El Sr. Maysonet la venía siguiendo porque ella supuestamente no se sentía bien y él quería garantizar que ella iba a llegar a su casa. Según el apelante, la perjudicada también comentó "*Ay, caramba, otro accidente más.*"

El apelante llamó al 911 y les pidió que enviaran una ambulancia.

El apelante fue entrevistado por el agente Cruz. Le dio su versión de los hechos. Más tarde esa noche, lo llamó para darle el teléfono del Sr. Maysonet. En esa llamada, el agente Cruz supuestamente le comentó una versión diferente. El apelante le dijo que la versión correcta era la que él le había dado.

La noche de los hechos, su hermano llegó al lugar del accidente y tomó varias fotografías de su automóvil. Estas fotografías también fueron presentadas en evidencia.

El apelante reclamó al seguro por los daños causados a su automóvil. La reparación costó $18,000.

Fue entrevistado por el agente Cruz en más de una ocasión. El agente Cruz no le dijo que lo consideraba responsable por el accidente. Se enteró cuando lo citaron al Tribunal.

Los tres acompañantes del apelante, Lourdes Torres, Jorge Ramírez y Zulma Díaz, también testificaron y confirmaron la versión del accidente ofrecida por éste.

El agente de la Policía Jerry Cruz declaró que había investigado el accidente la noche de los hechos. Trabaja asignado a la Unidad de Autopistas de Buchanan y ha intervenido en la investigación de alrededor de 250 accidentes.

La noche de los hechos, recibió una llamada por radio que le informó del accidente y fue al lugar a investigar. El accidente ocurrió luego de la salida de Río Hondo, en el kilómetro 13.9 más o menos. Son como 8 hectómetros más debajo de la salida. Son como 20 segundos de la salida, a una velocidad normal.

Encontró que había un carro en un lado y otro al otro lado. Ya había llegado la ambulancia.

Vio los vehículos. El vehículo del apelante estaba chocado.

Entrevistó al apelante y le tomó los datos. El le dijo que él era el conductor del BMW. El apelante le explicó que él iba por el carril central y que la conductora del Mitsubishi había salido de Río Hondo y lo había impactado por el lado derecho del BMW, con el lado izquierdo delantero del automóvil de ella. ■ Marcó la versión del apelante en un diagrama. No entrevistó a los pasajeros del BMW.

El agente identificó a la perjudicada. No entrevistó al Sr. Maysonet.

Encontró "debris" en el carril izquierdo de Bayamón a Arecibo y en el área de la valla, donde ocurrió el impacto con el vehículo de la perjudicada. No vio huellas de un frenazo.

La ambulancia se llevó a la perjudicada. El se quedó con los vehículos. Al rato, llegó la mamá de ella y se hizo cargo del Mitsubishi. Los automóviles fueron removidos por grúa.

Él fue al CDT y entrevistó a la perjudicada, quien le dijo que la habían impactado por detrás mientras ella conducía por el carril de la extrema izquierda.

Más tarde esta noche, el apelante lo llamó al cuartel y le dijo que él se había equivocado y que no era por la derecha que lo habían impactado, sino por el otro lado, por la izquierda. La perjudicada lo había chocado con el lado frontal derecho del vehículo de ella al lado trasero izquierdo del BMW de él. El pensó que el apelante le había mentido.

Entrevistó a las partes nuevamente. El apelante volvió a cambiar de versión y a decir que la perjudicada lo había chocado en el lado derecho, como él lo había marcado la primera vez. El decidió someter el caso en su contra. Entendió que por la magnitud del impacto, el apelante venía conduciendo a una velocidad mayor a la que él había indicado.

Presentó la denuncia muchos meses después. La tuvo que hacer tres veces porque se perdió en el cuartel. Esto ocurrió dos veces.

A base de la prueba desfilada, el Tribunal de Primera Instancia declaró culpable al apelante del delito imputado.

Al llegar a su decisión, el Tribunal confirió peso a la evidencia física de las fotografías.

El Tribunal explicó:

*"Los tres alegados pasajeros aseguran que el Mirage está chocado de frente.*

*El Mirage no está chocado de frente. No tiene nada al frente excepto una [a]bolladura en el lado izquierdo. Es físicamente imposible que el Mirage haya estado conduciendo en ese Expreso en reversa, haya estado conduciendo en dirección de sur a norte. En el lado derecho no tiene absolutamente ninguna [a]bolladura, mucho menos a la altura de dónde aparece el impacto o el supuesto impacto del BMW, ... Ese impacto no pudo haber sido producido por ninguna parte del Mirage. Ninguna, porque su frente está intacto y su lado derecho*

*también. ...*

*El agente habla del "debris", lado izquierdo, el carril izquierdo concuerda con la teoría ... [de la perjudicada]. Hay algo más que concuerda con la posición de ella. Es la distancia entre el lugar del accidente y la salida del Expreso. Son, según el agente, unos mil metros...*

*Cuando ella va declarando toda la forma en que ella se va cambiando de carril y cuando uno ve ... la velocidad, ..., que ellos dicen que van conduciendo, cuando uno ve la distancia que transcurrió y el tiempo, todo concuerda,... ".*

El Tribunal declaró culpable al apelante y lo condenó a la pena antes mencionada.

El apelante solicitó reconsideración del fallo del Tribunal. Alegó que no se le había identificado como el conductor del BMW y que la prueba no apoyaba el veredicto de culpabilidad.

Mediante resolución emitida el 24 de mayo de 2005, el Tribunal de Primera Instancia denegó esta solicitud.

En su resolución, el Tribunal explicó:

*"Un análisis de la prueba presentada, incluyendo las fotografías sometidas por la defensa, confirma la versión del Ministerio Público, según expuesto en la denuncia. Resulta obvio que el vehículo de la perjudicada fue impactado por la parte posterior. Resulta igualmente obvio que el vehículo del acusado fue impactado en su parte frontal. El testimonio del agente Cruz en relación al lugar del accidente (kilómetro y hectómetro), así como el lugar de la salida hacia el expreso ... tomada por la perjudicada, corrobora el testimonio de ésta en cuanto al tiempo transcurrido entre su entrada al expreso, cambio de carriles y tiempo de impacto. Más aún, evidencian una velocidad moderada promedio [de] entre 40 a 45 m.p.h. A su vez, el testimonio del agente en cuanto al "debris" confirma la versión de la perjudicada en cuanto a que el accidente ocurrió en el carril izquierdo, no en el central.*

*La versión de los testigos de defensa y el acusado es totalmente increíble. Las propias fotografías presentadas por la defensa desmienten la posibilidad de un impacto lateral trasero, cuando se compara con el vehículo de la perjudicada, el cual no muestra **ningún** daño en su parte delantera derecha, ya frontal o lateral. Por el contrario, llama mucho la atención la versión del agente Cruz en cuanto a la llamada [d]el acusado para cambiar su versión original. Ello demuestra, no sólo falta de verdad en lo informado, sino en la planificación en cuanto a la versión del accidente.*

*En cuanto a la identidad del conductor causante del accidente, ésta nunca fue cuestionada. [É]ste se encargó de admitirle al agente investigador que conducía el automóvil."* (Subrayado original)

El Tribunal denegó la moción de reconsideración del apelante.

Insatisfecho, éste acudió ante este Tribunal.

### III

En su recurso, el apelante plantea que el Tribunal de Primera Instancia erró al declararlo culpable del delito imputado, a pesar de que la prueba resultaba insuficiente para establecer su culpabilidad.

La Sección 11 del Art. II de la Constitución de Puerto Rico, según se conoce, consagra la garantía a todo acusado de un delito de que se le presuma inocente, debiendo establecerse su culpabilidad más allá de duda razonable. *Pueblo v. Irizarry*, 156 D.P.R. ___ (2002), **2002 J.T.S. 68**, a la pág. 1,108; *Pueblo v. González Román*,

138 D.P.R. 691, 707 (1995); *Pueblo v. Rosaly Soto,* 128 D.P.R. 729, 739 (1991); véase, además, Regla 110 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110.

El peso corresponde al Estado para establecer, más allá de duda razonable, los elementos del delito imputado, así como la conexión del acusado con los hechos y la intención o negligencia de éste. *Pueblo v. Irizarry,* **2002 J.T.S. 68**, a la pág. 1,109; *Pueblo v. Acevedo Estrada,* 150 D.P.R. 84, 99 (2000).

La prueba requerida no sólo tiene que ser suficiente en derecho, sino que debe ser satisfactoria, esto es, capaz de producir *"certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Pueblo v. Acevedo Estrada,* 150 D.P.R. a la pág. 100; *Pueblo v. González Román,* 138 D.P.R. a la pág. 707; *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 652 (1986).

La duda razonable, según ha aclarado el Tribunal Supremo de Puerto Rico, es aquella insatisfacción o intranquilidad en la conciencia del juzgador sobre la culpabilidad del acusado una vez desfilada la prueba. *Pueblo v. Torres Rivera,* 129 D.P.R. 331, 341 (1991).

Esto no implica que deba destruirse toda duda posible, sea especulativa o imaginaria, ni que la culpabilidad del acusado tenga que establecerse con certeza matemática. *Pueblo v. Rosario Reyes,* 138 D.P.R. 591, 598 (1995); *Pueblo v. Pagán, Ortiz,* 130 D.P.R. 470, 480 (1992); *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748, 761 (1985). Sólo se exige que la prueba brinde la certeza moral que convence, dirige la inteligencia y satisface la razón. *Id.*

No obstante, en los casos en que la prueba no establezca la culpabilidad más allá de duda razonable, no puede prevalecer una sentencia condenatoria. *Pueblo v. Acevedo Estrada,* 150 D.P.R. a las págs. 100-101; *Pueblo v. González Román,* 138 D.P.R. a la pág. 708; *Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 63 (1991).

En tales circunstancias, la revisión de la determinación sobre culpabilidad del acusado se considera una cuestión de derecho. *Pueblo v. Acevedo Estrada,* 150 D.P.R. a la pág. 100; *Pueblo v. González Román,* 138 D.P.R. a la pág. 708; *Pueblo v. Cabán Torres,* 117 D.P.R. a la pág. 653.

En el caso de autos, el apelante fue acusado de una infracción al Art. 5.08 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5128. Dicho precepto castiga a *"[t]oda persona que condujere un vehículo de forma imprudente o negligentemente temeraria, con menosprecio de la seguridad de personas o propiedades".*

Para probar este delito es necesario establecer que el acusado conducía un vehículo de motor de forma atolondrada o que mediante el manejo negligente se le ocasionó daño a alguna persona. Véanse, *Pueblo v. González Rivera,* 102 D.P.R. 589, 590 (1974); *Pueblo v. López Vera,* 101 D.P.R. 37, 40 (1973); *Pueblo v. González Rivera,* 94 D.P.R. 686, 688-689 (1967); *Rodríguez Rolón v. Tribunal Superior,* 91 D.P.R. 840, 849-850 (1965).

En el presente caso, el Tribunal de Primera Instancia concluyó que el accidente que dio lugar a la acusación fue provocado por el apelante. El Tribunal confirió credibilidad a la versión de la perjudicada y determinó que el accidente se produjo cuando el BMW que conducía el apelante impactó por detrás el automóvil de la perjudicada.

El apelante cuestiona la aquilatación de la prueba realizada por el Tribunal. Se queja de que el Tribunal descartó el testimonio del apelante y de los tres pasajeros que viajaban con él, quienes declararon que fue el vehículo de la perjudicada el que impactó al del apelante. El apelante alega que la perjudicada tenía una motivación económica para mentir, por cuanto ella carecía de seguro y hubiera sido responsable por los

cuantiosos daños ocasionados a su automóvil.

La norma es que la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece deferencia y que sus determinaciones no deben ser modificadas por el foro apelativo, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Acevedo Estrada*, 150 D.P.R. a la pág. 99; *Pueblo v. Somarriba García*, 131 D.P.R. 462, 472 (1992); *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. a las págs. 62-63; *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 316 (1991).

En el presente caso, hemos considerado el récord, y no estamos en posición de sustituir el criterio del Tribunal de Primera Instancia. Lo cierto es que, según hemos indicado, el Tribunal de Primera Instancia descartó la versión del apelante a base de las fotografías de los vehículos de las partes. Dichas fotografías reflejaron que el automóvil de la perjudicada no tenía impacto alguno en su lado derecho, lo que resultaba inconsistente con la versión del apelante de que la apelada lo había chocado a él en el lado izquierdo del BMW.

El Tribunal consideró, además, que el agente Cruz había observado *"debris"* en el carril izquierdo del Expreso, lo que también era consistente con el testimonio de la perjudicada y con la apreciación del agente sobre el lugar del accidente. Su análisis coincidió con la versión de ella. El Tribunal confirió credibilidad al testimonio del agente, quien carece de interés personal en el caso, y quien declaró que el apelante había cambiado su versión sobre cómo habían ocurrido los hechos, en dos ocasiones, lo que el agente consideró era un indicio de su culpa.

El apelante alega que la declaración de los testigos del Pueblo fue inconsistente en diversos particulares, por lo que no es digna de credibilidad. Nos invita a sustituir la apreciación del Tribunal de Primera Instancia por la nuestra.

La aquilatación de la prueba y la adjudicación de credibilidad es una función que tradicionalmente corresponde al magistrado que preside el juicio. *Pueblo v. Chévere Heredia*, 139 D.P.R. 1, 15 (1995); *Pueblo v. Pagán, Ortiz*, 130 D.P.R. a la pág. 483.

La función de este Tribunal es más limitada y consiste en examinar si la prueba que el Tribunal de Primera Instancia consideró veraz es suficiente en derecho para justificar una convicción.

Debe reconocerse, en este sentido, que un Tribunal no está obligado a decidir de conformidad con las declaraciones de cualquier número de testigos, que no llevaren a su ánimo la convicción contra un número menor u otra evidencia que le convenciere. 32 L.P.R.A. Ap. IV, R. 10.

Al contrario, la declaración de un testigo que merezca la credibilidad del Tribunal de Primera Instancia es suficiente en nuestro ordenamiento para establecer cualquier hecho. *Id.; Pueblo v. Mejías*, 160 D.P.R. ___ (2003), **2003 J.T.S. 126**, a la pág. 1,336; *Pueblo v. Chévere Heredia*, 139 D.P.R. a la pág. 15; *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 128 (1991); *Pueblo v. Acevedo Quiñones*, 100 D.P.R. 894, 899 (1972).

El sólo hecho de que existan contradicciones en la declaración de un testigo, de por sí, no justifica que se rechace dicha declaración en su totalidad si las contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la transacción delictiva, superar la presunción de inocencia y establecer la culpabilidad más allá de duda razonable. *Pueblo v. Chévere Heredia*, 139 D.P.R. a la pág. 15; *Pueblo v. Pagán, Ortiz*, 130 D.P.R. a la pág. 483; *Pueblo v. Rodríguez Román*, 128 D.P.R. a la pág. 129; *Pueblo v. Ramos y Alvarez*, 122 D.P.R. 287, 317 (1988) *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 609 (1988).

La máxima *falsus in uno, falsus in ómnibus* tampoco autoriza a rechazar toda declaración de un testigo porque se haya contradicho o faltara a la verdad en parte de su testimonio. *Pueblo v. Pagán, Ortiz*, 130 D.P.R. a

la pág. 483.

En la situación de autos, aunque reconocemos la insatisfacción del apelante con el resultado, no podemos concluir que el Tribunal de Primera Instancia actuó en contra del derecho al admitir la versión de la perjudicada y rechazar los testimonios en contrario del apelante y sus acompañantes.

Hasta tanto no se identifique un mecanismo superior para encontrar la verdad en los procesos judiciales, debe descansarse en la sabiduría y el sentido común de los jueces, quienes vienen llamados a evaluar de forma cotidiana testimonios como los vertidos en el caso de autos.

En el presente caso, el Tribunal de Primera Instancia concedió un valor decisivo a la evidencia de las fotografías y a la ubicación del "*debris*" en la carretera. Se trata de evidencia objetiva, que es menos susceptible a los problemas de memoria y percepción que la declaración de los testigos. No podemos decir que este juicio fue errado.

El apelante alega que el Ministerio Público no pudo establecer que el apelante era el conductor del BMW porque la perjudicada nunca lo vio y el agente Cruz no tenía conocimiento personal de los hechos. Este es un argumento frívolo, ya que el apelante declaró a su favor y testificó que él conducía su automóvil.

Además, el apelante le admitió lo anterior al agente Cruz cuando éste investigaba el accidente, lo que también podía ser considerado por el Tribunal. Véase, *Pueblo v. Chaar Cacho*, 109 D.P.R. 316, 323 (1980).

Por los fundamentos expresados, se confirma la sentencia apelada.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**ESCOLIO 2006 DTA 73**

**1.** Según indicado, el automóvil de la perjudicada había sufrido un choque anterior en su lado frontal izquierdo.