# 2007 DTA 130

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE ARECIBO**

YOLANDA PÉREZ QUILES
Querellante-Apelada

v.

OFIMOBILIA DEL CARIBE CORPORATION Y FELIPE LEÓN MURILLO
Querellado-Apelante

Núm. KLAN-07-00359

San Juan, Puerto Rico, a 14 de noviembre de 2007

Panel integrado por su Presidente, el Juez Martínez Torres, la Juez
Cotto Vives y el Juez Miranda De Hostos

Cotto Vives, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ofimobilia del Caribe, Corp. comparece ante este Tribunal para solicitarnos la revisión de una sentencia emitida por el Tribunal de Primera Instancia, Sala de Arecibo, el 9 de febrero de 2007. En la sentencia, declaró con lugar la querella en cuanto a la reclamación de despido ilegal bajo la Ley de Represalias, Ley 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194 *et seq*. En consecuencia, ordenó al querellado a reinstalar a la querellante y pagarle los salarios dejados de percibir, más una suma igual por concepto de penalidad. Además, ordenó a la parte querellada pagarle: $20,000 por los daños y angustias mentales sufridos por la querellante; $3,000 por las comisiones de ventas no pagadas y honorarios de abogado a razón de un 25% de la indemnización base.

Por los fundamentos que a continuación expondremos, se modifica la sentencia apelada a los efectos de que se deduzca del total de salarios dejados de percibir a ser pagados a la querellante-apelada, la parte de la mesada que ya le fue pagada. Una vez así modificada, se confirma.

### I

Los hechos son los siguientes. Este caso se originó con una querella presentada por la señora Yolanda Pérez Quiles contra su patrono Ofimobilia del Caribe y el señor Felipe León Murillo, por despido injustificado, discrimen y represalias al amparo del procedimiento sumario, Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 *et seq*. En síntesis, la señora Pérez Quiles alegó que su patrono había desarrollado en su contra un patrón de discrimen por nacionalidad, represalias, y que su despido era uno injustificado. Ofimobilia contestó la querella, en la que levantó varias defensas afirmativas, siendo la más relevante que el despido de la querellante fue por justa causa basado en la reestructuración operacional de la compañía.

Luego de varios trámites procesales, el coquerellado, Felipe León Murillo, presentó una moción de sentencia sumaria, en la que negó los hechos en su contra y responsabilidad de su parte en este asunto. El TPI la declaró con lugar y, por consiguiente, emitió una sentencia parcial de conformidad, el 29 de noviembre de 2005. Además, permitió la enmienda por hostigamiento sexual presentada por la querellante.

La vista en el caso fue celebrada los días 10, 11 y 22 de agosto de 2006. Por la parte querellante, declaró la señora María Montalvo y la propia querellante, la señora Yolanda Pérez Quiles. Por la parte querellada declararon la señora Eugenia León y el señor Francisco León. Los testigos Héctor Rivera y Felipe León no comparecieron, a pesar de que habían sido anunciados en el *pre-trial*, por lo que el tribunal les aplicó la presunción de la Regla 16(5) de Evidencia, 32 L.P.R.A. Ap. IV, R. 16.

Desfilada la prueba testifical en el caso, el Tribunal de Primera Instancia emitió la sentencia apelada, en la que declaró con lugar la querella en cuanto a la reclamación de despido ilegal al amparo de la Ley de

Represalias, Ley 115, *supra*. En consecuencia, ordenó al querellado a reinstalar a la querellante y pagarle los salarios dejados de percibir, más una suma igual por concepto de penalidad. Además, ordenó a la parte querellada pagarle: $20,000 por los daños sufridos por la querellante; $3,000 por las comisiones de ventas no pagadas y honorarios de abogado a razón de un 25% de la indemnización base.

En desacuerdo, Ofimobilia acude ante nos y alega que erró el TPI:

"*1. en la apreciación de la prueba, particularmente al emitir las determinaciones de hechos números 11, 16, 18, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33 y 34.*

*2. en la apreciación de la prueba al omitir la determinación de múltiples hechos pertinentes que fueron debidamente probados.*

*3. en la apreciación de la prueba al concluir que los testimonios de la querellante-apelada y de su testigo María Montalvo no fueron impugnados y merecen toda credibilidad.*

*4. al concluir que el despido de la querellante-apelante fue injustificado, por cuanto se le pagó la mesada sin ésta pedirla; que no hubo prueba de plan de reestructuración o crisis económica; y que la querellante-apelada fue sustituida por otra empleada que pasó a ocupar el mismo puesto que ella ocupaba antes de ser despedida.*

*5. al concluir que el despido de la querellante-apelada fue en represalia por ésta haber amenazado con acudir a los foros pertinentes a prestar una declaración.*

*6. al concluir que la querellante-apelada sufrió daños por la suma de 20,000 y al ordenarle a la parte querellada-apelante indemnizar los mismos.*"

## II

La Ley 80 del 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a *et seq.*, es la disposición legal que regula el despido injustificado. Su exposición de motivos y su historial legislativo demuestran la preocupación del legislador de proteger a los trabajadores en la tenencia de empleo y su interés por desalentar la incidencia de despidos injustificados. La Ley 80, *supra,* define lo que se entenderá como justa causa de la siguiente manera:

"*Se entenderá por justa causa para el despido de un empleado de un establecimiento:*

*(a) ...*

*(b) ...*

*(c)...*

*(d) cierre total, temporero o parcial de las operaciones del establecimiento.*

*(e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*

*(f) reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias anticipadas, o que prevalecen al ocurrir el despido.*

*No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento.*" 29 L.P.R.A. sec. 185b.

La justa causa para despido dispuesta en los incisos (d), (e) y (f) del Artículo 2 de la Ley 80, *supra*, comúnmente se asocia y es atribuible al negocio del patrono. Éstas son relacionadas a actuaciones del patrono dirigidas a la administración de su negocio. Principalmente se presentan por razones de índole económica que surgen según la operación diaria de la empresa. *Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364, 376 (2001).

Reiteradamente se ha dispuesto que, a tenor de la Ley 80, *supra,* constituye justa causa para el despido aquélla que tiene su origen, no en el libre arbitrio o capricho del patrono, sino la vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión. *Id.*

La Ley 80, *supra,* establece una presunción de que el despido del empleado fue injustificado, correspondiendo al patrono rebatirla mediante preponderancia de la evidencia. *Díaz v. Wyndham Hotel Corp., supra,* a la pág. 378; *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R. 643, 650 (1994); *Soto v. Hotel Caribe Hilton,* 137 D.P.R. 294, 303-304 (1994); *Rivera Águila v. K-Mart de P.R.,* 123 D.P.R. 599, 610 (1989); *Báez García v. Cooper Labs., Inc.,* 120 D.P.R. 145, 152 (1987). Para rebatir la presunción de despido injustificado, el patrono puede presentar como defensa afirmativa prueba que establezca, mediante la preponderancia de la evidencia, que hubo justa causa para el despido. *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra,* a la pág. 650. Está obligado a alegar en su contestación a la demanda los hechos que dieron margen al despido y probar que el mismo estuvo justificado. 29 L.P.R.A. sec. 185k(a). Véase, además, *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. 536, 544 (1979).

### III

La Ley 115, *supra,* enmendó el Art. 2 de la Ley de Despido Injustificado, Ley 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185b, para hacer más amplia la protección del empleado cuando testifica en foros administrativos, legislativos o judiciales. Para ello, añadió dos oraciones al final del artículo, de forma que éste ahora dispone como sigue:

*"Se entenderá por justa causa para el despido de un empleado de un establecimiento:*

*(a) ..*

*[...]*

*(f) ...*

*No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento.* **Tampoco se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley.** *En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una suma igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo.*" (Énfasis nuestro.) 29 L.P.R.A. sec. 185b.

Cualquier persona que alegue una violación a dicha ley *"podrá instar una acción en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios*

*y honorarios de abogado. La responsabilidad del patrono en relación con los daños y salarios dejados de devengar será el doble de la cuantía que se determine causó las violaciones a las disposiciones de dichas secciones. "* 29 L.P.R.A. sec. 194a.

El Tribunal Supremo de Puerto Rico ha aclarado que para establecer un caso *prima facie* en este tipo de situaciones, el empleado sólo viene obligado a establecer que: (1) participó en una de las actividades protegidas por la ley; y (2) que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo. 29 L.P.R.A. sec. 194a(c). Véase, además, *Ocasio v. Kelly Servs., Inc.,* 163 D.P.R. ____ (2005), **2005 J.T.S. 9**, a la pág. 645; *Hernández v. Espinosa,* 145 D.P.R. 248, 274 (1998); *Marín v. Fastening Systems, Inc.,* 142 D.P.R. 499, 511 (1997).

El peso entonces se desplaza al patrono, quien viene obligado a alegar y fundamentar una razón legítima y no discriminatoria para su actuación. El empleado puede establecer que la razón aducida por el patrono constituye un pretexto. 29 L.P.R.A. 194a(c). Véase, además, *Hernández v. Espinosa, supra,* a las págs. 273-274; *Marín v. Fastening Systems Inc., supra,* a las págs. 510-511.

## IV

Los señalamientos de error números 1, 2 y 3 van dirigidos a impugnar las determinaciones de hechos efectuadas por el tribunal *a quo,* las cuales, según el apelante, no están sostenidas por la prueba presentada en el caso. Particularmente, señala que el tribunal incurrió en error manifiesto al efectuar las determinaciones de hechos números 11, 16, 18, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 33 y 34. No le asiste la razón. Veamos.

Primeramente, discutiremos en conjunto las determinaciones de hechos número 11, 16, 21, 22, 23 y 30, debido a que entendemos que, aun cuando el TPI pudo haber cometido algún error en su redacción u omitido algún dato específico, los mismos no son de tal envergadura que alteren el resultado del caso. Entre los errores alegadamente cometidos en las referidas determinaciones, el apelante menciona los siguientes: (a) al indicar que el supervisor directo de la querellante era el señor Francisco León García cuando en realidad lo era el señor Felipe León Murillo [determinación de hecho número 11]; (b) al omitir que el informe de situación —donde la querellante hace unas denuncias respecto a unos incumplimientos del patrono con ciertas leyes laborales y condiciones de seguridad en el empleo—, se preparó el 10 de septiembre de 2001, más de un año y cuatro meses antes del despido de la apelada [determinación de hecho número 16]; (c) al indicar que fue el señor Francisco León quien refirió el asunto de las planillas del CRIM a su hijo Felipe León Murillo, cuando alegadamente fue la querellante la que llamó a éste para discutir dicho asunto [determinación de hecho número 21]; (d) al indicar que, una vez la querellante discute el asunto de las patentes con los señores León, ésta les advirtió que iría *"al Departamento del Trabajo y a las agencias pertinentes",* lo que ocasionó que al día siguiente ésta fuera despedida de su empleo [determinaciones de hechos número 22 y 23]. Entendemos que esto constituye un error oficinesco, ya que —basado en el expediente del caso—, somos de opinión que el TPI se refería *"al CRIM";* y (e) al indicar que durante el año y medio que el empleado Héctor *"El Chino"* Rivera trabajó para la compañía, éste estuvo sin póliza del Fondo del Seguro del Estado [determinación de hecho número 30].

Al tomar en consideración los errores y omisiones alegadamente cometidos por el tribunal sentenciador en las determinaciones de hechos arriba señaladas, llegamos a la conclusión de que los mismos son intrascendentales a los hechos medulares del caso, es decir, no son de tal envergadura que alteren el resultado. Entendemos que aun cuando las dejáramos sin efecto —como pretende la parte apelante—, el resultado sería el mismo, ya que éste encuentra apoyo en otras determinaciones de hechos efectuadas por el tribunal, así como en el expediente del caso.

Por otro lado, las determinaciones de hechos número 18, 20, 24, 25, 26, 29 y 34 se refieren a la credibilidad que le mereció al tribunal el testimonio de varios de los testigos presentados. Las referidas determinaciones

están basadas en los testimonios de la querellante-apelada, la señora Yolanda Pérez Quiles; y el de las señoras Maria Eugenia León y María E. Montalvo Hernández, ambas empleadas de la compañía querellada.

Es norma establecida aquélla que nos impide como foro apelativo intermedio intervenir con la apreciación de la prueba que hizo el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Colón González v. K-Mart*, 154 D.P.R. 510 (2001); *Trinidad García v. Chade*, 153 D.P.R. 280 (2001). Tampoco en apelación, se puede descartar y sustituir las conclusiones de hechos bien ponderadas del foro de instancia ni la adjudicación de credibilidad que haga el juzgador de los hechos. *Rolón v. Charlie Car Rental Inc.*, 148 D.P.R. 420 (1999). Las determinaciones sobre la credibilidad que le dio a los testigos el tribunal sentenciador, es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, *"ya que él fue quien oyó y vio declarar a los testigos"*. *Pueblo v. Bonilla Romero*, 120 D.P.R. 92, 111 (1987).

La determinación número 31 será discutida en conjunto con los señalamientos de error 4 y 5, y la determinación número 33 se discutirá más adelante.

Finalmente, en cuanto a la determinación de hecho número 34, nos abstendremos de intervenir con la misma, ya que la parte apelante no la discute a cabalidad ni nos brinda suficientes elementos de juicio para intervenir con ella.

## V

En los señalamientos de error número 4 y 5, el apelante alega que erró el TPI al concluir que el despido de la querellante-apelada fue injustificado y que fue hecho en represalia por ésta haber amenazado con acudir a los foros pertinentes a prestar una declaración. Argumenta, además, que la Ley de Represalias, *supra*, permite el despido de empleados como consecuencia de cambios tecnológicos o reorganización de una empresa, debido a una reducción en el volumen de producción, ventas o ganancias. Sostiene que lo importante en estos casos es probar la necesidad del patrono de realizar cambios para la reorganización de la empresa y no que la compañía se encontraba en crisis económica. Añade que tanto la contratación de nuevos vendedores como la contratación de la señora María Montalvo aliviaron la situación económica de la corporación, toda vez que le permitió conducir sus negocios con mayor agilidad, eficiencia y productividad. Continuó indicando que como parte del plan de reorganización de la compañía, la señora Montalvo fue contratada para realizar las labores secretariales que antes realizaba la querellante y parte de las funciones gerenciales que antes realizaba el señor León Murillo.

Del expediente ante nos surge que la razón aducida por la querellada para el despido de la querellante fue la reestructuración de la compañía por falta de ingresos, debido a que alegadamente le adeuda a la compañía matriz la cantidad de $400,000. No obstante, de las determinaciones de hechos del tribunal *a quo*, se desprende que la señora Montalvo contradijo tal alegación al indicar que en la compañía no había problema económico alguno. Al ser interrogada sobre este asunto, declaró lo siguiente:

*"P   Cuando usted llegó, ¿qué problema económico si alguno, existía en el negocio Ofimobilia?*

*R   **Problemas económicos como tal, ninguno.***

*P   ¿Cómo era la actividad económica allí, si lo sabía?*

*R   Había bastante inventario. Las ventas eran buenas. El margen de ganancia era bueno.*

*P   ¿Puede darnos un ejemplo?*

*[...]*

R    Pues allí había sillas que el costo sin contar el flete ni arbitrios, costaban a $8.00. Este... Poner una ganancia sin el flete es más o menos es lo mismo, el doble. Se (Inaudible) como en $16.00 y se vendía en $75.00 ó $80.00 y así sucesivamente.

HONORABLE JUEZ
P    Usted indica que había un margen de ganancia, que había inventario.

TESTIGO
Sí.

HONORABLE JUEZ
(Inaudible) ... ¿Inventario adecuado?

TESTIGO
Sí y tenía buena salida porque la compañía se dedica a equipo de oficina y tiene buena salida.

P    **Le pregunto, ¿en algún momento Francisco León o Felipe León le plantearon que Ofimobilia estuviera en quiebra?**

R    **No, en ningún momento.** " (Énfasis nuestro.) Páginas 30-31 de la T.P.O de la vista del 10 de agosto de 2006.

Por otro lado, surge, a su vez, del récord ante nos que el señor Francisco León no aportó prueba para demostrar que había una crisis económica en la empresa, ni que le debiera dinero a su compañía matriz. Por el contrario, la querellante testificó que no había crisis ni problemas económicos en la compañía, ya que el negocio había generado 3 millones en venta el último año que ésta trabajó para la misma. ■ Su testimonio sobre el particular fue el siguiente:

"P    Le pregunto testigo, en relación a casos de incumplimiento que usted señala, ¿había alguna razón de índole económica? ¿Algún problema que tuviera la compañía para no cumplir con esos requisitos?

R    No, ninguna.

P    ¿Cómo eran las ventas y ganancias si lo sabe?

R    Ellos vendían sobre tres millones de dólares.

P    ¿Cómo usted lo sabe?

R    Porque yo llevaba la contabilidad básica de las ventas de los equipos.

P    ¿Tres millones en qué período de tiempo?

R    Bueno, esos tres millones de dólares ellos lo vinieron a vender en el tercer año que yo estuve en la fábrica porque según los ingresos de la fábrica era aumentando. El primer año vendimos un millón, por ejemplo. El segundo año estábamos vendiendo dos millones y ya para el tercer año estábamos vendiendo tres millones de dólares.

P    ¿Y quién si alguien le dijo a usted, le mencionó esa cifra?

R   El mismo Sr. Felipe León.

P   ¿Qué le dijo él si algo, relacionado a esas ventas?

R   Que estaba muy satisfecho y muy contento porque las ganancias estaban aumentando año por año y eso era importante porque la industria iba viento en popa. Que estábamos bien.

P   ¿Y la cifra de tres millones?

R   Sí, me mencionó todo eso.

P   ¿Se lo mencionó?

R   Sí, que habíamos vendido tres millones de dólares en el 2003.

P   Y ese fue el año en que usted fue despedida, ¿correcto?

R   Sí." Páginas 100-102 de la T.P.O. de la vista del 10 de agosto de 2006.

De otra parte, la querellada tampoco presentó prueba alguna de que tuviera un plan de reestructuración formal. Según el testimonio del señor Francisco León, el plan de reestructuración de la compañía consistió en sustituir a la querellante y al señor Felipe León por la señora Montalvo para que ésta realizara ambas funciones, y en contratar a dos vendedores para fortalecer el área de ventas. Según las determinaciones de hecho del tribunal *a quo*, la señora Montalvo declaró que fue contratada para sustituir a la querellante en su mismo puesto exactamente. ■ Así también, dicho foro determinó como un hecho probado que, aun cuando el señor Francisco León y la señora María Eugenia León declararon que contrataron a la señora Montalvo para una posición distinta a la de la querellante, al éstos ser confrontados con la contestación al interrogatorio, admitieron que efectivamente ella había sido contratada para sustituir a la señora Pérez en el mismo trabajo o plaza de Asistente Administrativa. ■ No obstante, desconocemos cuál era el salario que se le pagaba a la señora Montalvo, si era menor o era el equivalente a la suma del salario de la querellante con el del señor Felipe León. Tanto el testimonio de la señora Montalvo como el de la querellante, le merecieron credibilidad al Tribunal de Primera Instancia, por lo que no intervendremos con las determinaciones de hechos efectuadas por dicho foro basadas en dichos testimonios.

## VI

En su quinto señalamiento de error, la parte querellada-apelante alega que incidió el TPI al concluir que el despido de la querellante-apelada fue en represalia por ésta haber amenazado con acudir a los foros pertinentes a prestar una declaración. Argumenta que si bien es cierto que la querellante alegó tener una causa de acción por represalia en el empleo bajo el supuesto de que fue despedida luego de que le expresara a su patrono su alegada intención de querellarse ante una o varias agencias de gobierno, no es menos cierto que la mera alegación de haber sido despedida en tales circunstancias no establece los elementos enumerados. Indica que la única prueba presentada por la apelada en apoyo de su reclamación fue su propio testimonio y que ésta nunca presentó prueba alguna de que hubiese acudido a alguna agencia gubernamental ni antes ni después de su despido.

Sabido es que el testimonio de un sólo testigo es suficiente para probar los hechos imputados a una persona, siempre y cuando éstos le merezcan entero crédito al juzgador de los hechos, tal y como pasó en este caso. Regla 10(D) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(D). Véase, además, *Pueblo v. Chévere Heredia*, 139 D.P.R. 1, 15 (1995); *Pérez v. Acevedo Quiñones*, 100 D.P.R. 894, 899 (1972).

Como se sabe, los hechos se establecen por el valor probatorio del testimonio del testigo o testigos que se

presenten y no por el número de éstos. Regla 10(E) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(E). Véase, además, *Mercado v. American Railroad Co.*, 61 D.P.R. 228, 232-3 (1943); *Ballester v. Farm & Dairy Products, Inc.*, 58 D.P.R. 479, 481 (1941). ). En ese sentido, el juzgador de los hechos puede muy bien descartar el testimonio de un testigo si no le merece crédito o credibilidad, aun cuando no haya prueba en contrario. Esta norma reviste importancia cuando existen elementos altamente subjetivos en la prueba.

Por otro, lado, cuando existe conflicto de prueba, corresponde precisamente al juez dirimirlo -particularmente cuando están en cuestión elementos altamente subjetivos-, debido a que fue éste quien oyó y vio declarar a los testigos y apreció su *demeanor*. Por lo tanto, el tribunal *a quo*, indudablemente, está en mejor posición para aquilatar la prueba testifical.

A los fines de la evaluación de la prueba testifical por un tribunal apelativo, la existencia de prueba conflictiva no necesariamente implica error manifiesto que justifique intervenir con la evaluación de la prueba y adjudicación de credibilidad que hizo el juzgador de hechos. Corresponde a éste dirimir el conflicto en la prueba.

En el caso de autos, al tribunal apelado le mereció entera credibilidad el testimonio de la querellante-apelada de que al día siguiente de haberle manifestado al señor Felipe León sobre el atraso en el pago de patentes y de advertirle de que iría al CRIM, fue despedida de su empleo por una alegada reestructuración de la compañía por economía. Abonaron a la determinación del tribunal *a quo*, el hecho de que la parte querellada no demostró tener un plan de reestructuración formal y el que no le convenciera la teoría de la parte demandada de que la sustitución de la querellante y el señor Felipe León por la señora Montalvo, respondió a razones de economía.

El testimonio de la querellante-apelada fue prueba suficiente y satisfactoria para concluir que su despido fue injustificado, ya que se debió a represalias por ésta haber amenazado a su patrono con acudir a los foros pertinentes a prestar una declaración sobre las irregularidades habidas en la compañía. La señora Pérez Quiles logró establecer un caso *prima facie* de represalias, ya que: (1) logró demostrar que le comunicó a su patrono sobre su intención de participar en una de las actividades protegidas por la ley; y (2) que, subsiguientemente, fue despedida. Siendo así, el patrono tenía que demostrar que tuvo razones justificadas para el despido, cosa que en este caso Ofimobilia no hizo.

En resumen, el examen de la exposición narrativa de la prueba testifical -específicamente el testimonio de la señora Pérez Quiles-, fue suficiente para establecer que su despido fue uno de discrimen por represalias. En ausencia de otra prueba en el expediente que menoscabe dicho testimonio, no existe razón para descartarlo. Por tanto, es razonable concluir que en el caso ante nos se configuró un discrimen por represalias.

Ante la ausencia de pasión, prejuicio o parcialidad por parte del tribunal *a quo*, decidimos no intervenir con las determinaciones de hechos efectuadas por el foro sentenciador y, en consecuencia, concluimos que los errores planteados por el apelante, no fueron cometidos.

## VII

De otra parte, en la determinación de hecho número 33, el TPI establece que a los testigos Héctor Rivera y Felipe León se les aplicó la Regla 16(5) de Evidencia, 32 L.P.R.A. Ap. IV, R. 16(5), debido a que los mismos no comparecieron a testificar no empece a que fueron anunciados en el pre-trial.

La Regla 16 de Evidencia, *supra*, en su inciso cinco (5), crea una presunción controvertible a los efectos de que *toda evidencia voluntariamente suprimida resultará adversa si se ofreciere*. *Pueblo v. Ramos Santos*, 132 D. P.R. 363, 377 (1992); *Granados v. Rodríguez Estrada V*, 127 D.P.R. 1, 28 (1990); *Rivera Águila v. K-Mart*, 123 D.P.R. 599, 612-613 (1989).

La referida presunción controvertible aplica en los casos civiles cuando la prueba testifical o documental anunciada no se presenta voluntariamente durante el juicio y tampoco se pone a disposición de la parte litigante contraria para su examen. Ahora bien, la parte contra la cual se pretende aplicar la presunción puede presentar prueba en contrario para derrotar el efecto de la presunción, como que también puede presentar prueba a los efectos de demostrar que la prueba anunciada no se presenta por razones que no le son imputables a dicha parte.

En el caso que atendemos, la parte querellada-apelante alega que no procedía la aplicación de la referida presunción debido a que el señor Héctor Rivera no estaba formalmente citado por el Tribunal de Primera Instancia, además de que se hicieron múltiples gestiones para localizarlo. Añade que para la fecha del juicio, dicho testigo ya no trabajaba para la apelante, además de que su testimonio era prueba acumulativa. En cuanto al señor Felipe León, indica que tampoco estuvo disponible para comparecer a juicio, debido a que a esa fecha se encontraba residiendo fuera del país. Asimismo alega que la reclamación en su contra fue desestimada mediante sentencia sumaria parcial fechada el 2 de diciembre de 2005.

Aun cuando entendiéramos que el error efectivamente se cometió, el hecho de aplicar o no la referida presunción no es un factor decisivo o sustancial en la sentencia apelada. Por tal motivo, no variaremos un dictamen en apelación por un error que no resulta perjudicial, ya que en nuestro ordenamiento jurídico rige la doctrina de que no procede la revocación de una sentencia o determinación, a menos que pueda ser deducido que la admisión o exclusión de la evidencia impugnada fue un factor decisivo o sustancial cuya revisión es solicitada. Esto quiere decir que sólo errores sustancialmente perjudiciales a la parte afectada conllevan la revocación de la sentencia apelada. Reglas 4, 5 y 6 de Evidencia, 32 L.P.R.A. Ap. IV, R. 4, 5 y 6. Véase, además, *Pueblo v. Rivera Nazario*, 141 D.P.R. 865 (1996); *Pueblo v. Chévere Heredia*, 139 D.P.R. 1 (1995); *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991). Además, consideramos que la apelante no nos proporciona suficientes elementos de juicio para determinar cuál es el efecto que la no aplicación de esa presunción tendría en relación con las cuestiones específicas planteadas en el recurso. Sin duda, se presentó prueba suficiente y satisfactoria para demostrar que el despido de la querellante-apelada fue por represalias y no por razones de reestructuración de la compañía.

En vista de lo anterior, este Tribunal considera que la aplicación de la presunción establecida en la Regla 16 (5) de Evidencia, *supra*, no varía el dictamen del tribunal recurrido.

## VIII

En el sexto señalamiento de error, las alegaciones de la parte apelante van dirigidas a cuestionar la imposición del pago de una indemnización por $20,000 a la querellante-apelada por los daños y angustias mentales alegadamente sufridos por ésta. Sostiene que, debido a que el despido de la apelada fue uno justificado, ésta no puede ser acreedora a remedio alguno contemplado en la Ley 115, *supra*.

Como ya hemos señalado, debemos recordar que la Ley 115, *supra*, contempla el remedio de la compensación por los daños reales sufridos y las angustias mentales. Dispone, además, que la responsabilidad del patrono en relación con los daños y a los salarios dejados de devengar será igual al doble de la cuantía que se determine. 29 L.P.R.A. sec. 19a.

Primeramente, debemos aclarar que la alegación de que la querellante no tiene derecho a la indemnización por daños que contempla la Ley 115, *supra*, es improcedente, debido a la decisión que hemos tomado de confirmar la determinación del TPI a los efectos de que se configuró un despido ilegal por represalias. Una vez resuelto esto, nos toca considerar si la cantidad de $20,000 por concepto de daños y angustias mentales es razonable. De la sentencia apelada se desprende que la imposición del pago de la mencionada suma responde a lo consignado por el tribunal *a quo* en la determinación de hecho número 32, es decir, los daños y angustias mentales sufridos por la querellante como consecuencia de su despido ilegal. Ello no contempla los salarios dejados de percibir, los cuales deberán ser computados, una vez el patrono deduzca la cuantía pagada a la

querellante por concepto de mesada.

El derecho a ser compensado por daños realmente sufridos no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de los mismos. *S.L.G. v. F. W. Woolworth and Co.*, 143 D.P.R. 76 (1997); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 510 (1985). Siendo así, y por descansar sustancialmente su estimación en la apreciación de la prueba, el Tribunal Supremo ha resuelto que los tribunales apelativos no intervendrán con la estimación y valoración de daños que haga el Tribunal de Primera Instancia, a menos que las cuantías sean ridículamente bajas o exageradamente altas. *Blás v. Hosp. Guadalupe,* 146 D.P.R. 267 (1998). Por consiguiente, la parte que solicita la modificación de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de circunstancias que hagan meritorio modificar las mismas. *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443 (1985).

En este caso, la compensación impuesta por el Tribunal de Primera Instancia a favor de la apelada no resulta exageradamente alta. Reconocemos que, como ha expresado repetidamente el Tribunal Supremo, la determinación de daños es una tarea difícil y compleja por la ausencia de criterios objetivos que orienten ese proceso. Debe recordarse que tal juicio debemos hacerlo sin tomar en cuenta la penalidad impuesta por ley que duplica esa suma. Ello es un asunto que descansa en una fuerte política pública de disuadir el despido de trabajadores por propósitos ilícitos contemplado en algunos estatutos laborales, como el que nos ocupa en este caso. *Beauchamp v. Dorado Beach Hotel,* 98 D.P.R. 633 (1976). Su sabiduría o justificación está fuera de nuestra función revisora en este momento. De una evaluación de la prueba que tuvo ante sí el foro apelado sobre este extremo, se desprende que no es apropiado que alteremos la cuantía concedida a esta empleada, por carecer este Tribunal de otros criterios en el récord que nos permita hacer una estimación distinta.

## IX

Como resultado del análisis que aquí presentamos y de los fundamentos de derecho que hemos expuesto, modificamos la sentencia apelada a los efectos de que se deduzca del total de salarios dejados de percibir a ser pagados a la querellante-apelada, la parte de la mesada que ya le fue pagada a ésta. Una vez así modificada, se confirma.

Lo ordenó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones